[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 431.]

THE STATE OF OHIO, APPELLANT, *v.* ADAMSON, APPELLEE.

[Cite as *State v. Adamson*, 1995-Ohio-199.]

*Criminal law—Evidence—Evid.R. 601(B)—Competency—Spouse remains incompetent to testify until he or she makes a deliberate choice to testify, with knowledge of the testifying spouse's right to refuse—Trial judge must take active role in determining competency.*

(No. 94-282—Submitted April 5, 1995—Decided July 5, 1995.)

Under Evid.R. 601(B), a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial judge must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify.

APPEAL from the Court of Appeals for Brown County, No. CA92-05-011.

_____

{¶ 1} On November 28, 1991, at around 11:30 p.m., Diane Christine Adamson ("Chris") drove her husband, defendant-appellee Darryl L. Adamson, to H.C. Freeman's residence in Georgetown, Ohio. Chris had urged Darryl to talk to Freeman to allay Darryl's fears that Chris and Freeman were romantically involved. The two men came upon each other in the driveway of Freeman's residence; they struggled and Freeman suffered two fatal stab wounds to the chest.

{¶ 2} At trial, the state called Chris Adamson to testify against her husband. She initially refused to testify, asserting her Fifth Amendment right against self-incrimination. Upon the prosecutor's request that the judge order her to testify, Chris Adamson was granted immunity pursuant to R.C. 2945.44. Due to the spousal privilege contained in R.C. 2945.42, the trial judge ordered Chris to answer questions only as to communications made or acts done within the known presence

of a third person, in this case, the deceased, Freeman. The trial court did not consider Evid.R. 601(B), which deals with the competency of spousal testimony. The trial judge never informed Mrs. Adamson that in testify against her husband she had to elect to do so pursuant to Evid.R. 601(B)(2).

{¶ 3} Mrs. Adamson complied with the judge's order to testify against her husband. While the prosecution did present other witnesses in its case against Adamson, none but Mrs. Adamson could testify as to the entire chain of events that unfolded in Freeman's driveway. Two prosecution witnesses, neighbors of Freeman, saw the two men mid-struggle, but did not see what preceded. Freeman's girlfriend, Denise Paeltz, was on the telephone with Freeman when Adamson arrived. She heard Freeman say, "What the hell are you doing," followed by "a name like Jerry or Jerryl." She testified hearing the other person say, "I was thinking about killing you."

{¶ 4} Adamson admitted killing Freeman, but denied that he did so with prior calculation and design. In his statement to police, which was entered into evidence at trial, he stated that when he arrived at Freeman's residence he was unsure of what to do. When he saw Freeman's truck, Adamson stated, he decided to teach Freeman a lesson by slashing its tires. Adamson stated that when he got to the front tire Freeman startled him by opening the door and emerging from the truck. As Freeman was leaving the truck, according to Adamson, he fell into Adamson, perhaps causing the first stab wound. A struggle followed, both men fell to the ground, and Freeman was stabbed again. Adamson stated that he had not intended to stab Freeman.

{¶ 5} Chris Adamson's testimony differed from her husband's in several important respects. She testified that she could see Freeman in his truck as she pulled into the driveway. She stated that it appeared that Adamson opened Freeman's door, that there was an exchange of words between the two, and that Adamson "[s]aid 'I come to talk to you, maybe I'll just fuck with you.'" Mrs.

Adamson also testified that it appeared that her husband had forcibly removed Freeman from his vehicle prior to the scuffle.

{¶ 6} Adamson was convicted of aggravated murder. Adamson's trial counsel also represented him on his appeal to the Twelfth District Court of Appeals. At trial and on appeal, Adamson's counsel failed to raise the issue of the competency of Mrs. Adamson's testimony, and the appellate court affirmed the conviction and sentence. However, the dissent in that case raised, *sua sponte*, the issue of spousal competency under Evid.R. 601(B). On June 21, 1993, after obtaining new counsel, Adamson filed a delayed application for reconsideration in the court of appeals, alleging ineffective assistance of counsel for failure to raise the issue of spousal competency at trial or on appeal. Upon reconsideration, Adamson's conviction was reversed and the cause was remanded for a new trial. The state now appeals.

{¶ 7} This matter is before this court upon the allowance of a discretionary appeal.

———————————

*R. Alan Corbin*, Brown County Prosecuting Attorney, for appellant.

*R. Scott Croswell, III* and *Elizabeth E. Agar*, for appellee.

*Betty D. Montgomery*, Attorney General, *Richard A. Cordray*, urging reversal for *amicus curiae*, Ohio Attorney General.

———————————

**PFEIFER, J.**

{¶ 8} Evid.R. 601(B) governs the competency of spouses to testify against each other regarding criminal activity. The rule provides:

"Every person is competent to be a witness except:

"* * *

"(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:

"(1) A crime against the testifying spouse or a child of either spouse is charged;

"(2) The testifying spouse elects to testify."

**{¶ 9}** The focus of Evid R. 601(B) is the competency of the testifying spouse; in contrast, R.C. 2945.42 focuses on the privileged nature of spousal communications:

" * * * Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness * * *."

**{¶ 10}** Thus, R.C. 2945.42 "confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication * * *." *State v. Rahman* (1986), 23 Ohio St.3d 146, 23 OBR 315, 492 N.E.2d 401, syllabus. However, if the accused commits acts in the known presence of a third person, the accused may not assert the spousal privilege. *Id*. That is the case even if that third person is unable to testify. See *State v. Mowery* (1982), 1 Ohio St.3d 192, 1 OBR 219, 438 N.E.2d 897.

**{¶ 11}** Spousal privilege and spousal competency are distinct legal concepts which interrelate and provide two different levels of protection for communications between spouses. Under R.C. 2945.42, an accused may prevent a spouse from testifying about private acts or communications. However, even when the privilege does not apply because another person witnessed the acts or communications, a spouse still is not *competent* to testify about those acts or communications unless she specifically elects to testify. While the presence of a witness strips away the protection of the privilege, the protection provided pursuant to Evid.R. 601 remains.

**{¶ 12}** In this case, the trial court was correct as to what Mrs. Adamson could *potentially* testify to. Since Darryl performed his acts in the presence of Freeman, he could not assert that those acts were privileged. However, the trial

court ignored the level of protection the Rules of Evidence provide. While Evid.R. 601 was amended in 1991 to allow the spouse the decision as to whether to testify against the accused spouse (the decision formerly lay with the accused), the rule still contains important protections for the accused, since it deals with the competency of persons testifying against him.

{¶ 13} The rule requires that the testifying spouse *elect* to testify against her spouse. An election is "[t]he choice of an alternative[;] [t]he internal, free, and spontaneous separation of one thing from another, without compulsion, consisting in intention and will." Black's Law Dictionary (5Ed. 1990) 517. Thus, under Evid.R. 601(B), a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse.

{¶ 14} Competency determinations are the province of the trial judge. *State v. Clark* (1994), 71 Ohio St.3d 466, 469, 644 N.E.2d 331, 334. Pursuant to Evid.R. 601(A), the trial judge must determine whether a child under ten is competent to testify by inquiring as to whether the child is capable of "receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." See, also, *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483. Likewise, under Evid.R. 601(B), the judge must take an active role in determining competency, and make an affirmative determination on the record that the spouse has elected to testify. Just because a spouse responds to a subpoena and appears on the witness stand does not mean that she has elected to testify.

{¶ 15} In this case, the court did not determine that the spouse had elected to testify. The court never informed Mrs. Adamson that it was her choice whether to testify and that the court could not force her to do so. Instead, after granting her immunity, the judge ordered her, "in the interest of justice," to testify. This was clearly error.

{¶ 16} We agree with the appellate court that although Adamson's counsel failed to object to the error at trial, the error rises to the level of reversible plain

error. Pursuant to the terms of Crim. R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899.

{¶ 17} The outcome of Adamson's trial would certainly have been different had his wife not testified against him. Adamson was convicted of aggravated murder, that is, murder committed with prior calculation and design. Adamson's story, that he had accidentally stabbed Freeman during a scuffle which occurred when Freeman startled him, was contradicted in key respects by his wife's testimony. Chris Adamson destroyed her husband's story of surprise: she testified that she could see Freeman inside his truck, that she thought her husband opened Freeman's door, and that her husband even exchanged words with Freeman before pulling him out of the truck. That this damaging testimony came from Adamson's wife probably caused the jury to consider it to be especially credible. Chris's testimony certainly was the key factor in Adamson's conviction for aggravated murder.

{¶ 18} Eliciting Chris Adamson's testimony without informing her of her right to not testify against her husband was plain error. We therefore affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————