[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Edward L. Elswick, appeals from the judgment of the Ashtabula County Court of Common Pleas convicting him of four counts of theft.
On April 23, 2000, appellant was indicted on four counts of theft. Count One and Count Three, respectively, alleged that, on or about May 13, 2000, appellant deprived MasterCuts of $1,583 in currency and $500.66 in negotiable instruments. Count Two and Count Four, respectively, alleged that, on or about May 27, 2000, appellant deprived MasterCuts of $2,844.50 in currency and $689.92 in negotiable instruments.
On August 25, 2000, appellant was arraigned and pleaded not guilty to all counts.
On January 5, 2001, appellant filed a motion in limine seeking to exclude the testimony of his wife, Judith Elswick ("Judith"), who was not charged with regard to her involvement in the thefts. In his motion, appellant argued that, pursuant to R.C. 601(B), his wife was not competent to testify against him. A hearing was held on February 15, 2001. Subsequently, the court overruled appellant's motion, finding that Judith Elswick had voluntarily elected to testify against appellant, in accordance with R.C. 601(B)(2).
A jury trial was held on March 7, 2001 and March 8, 2001.
At trial, Robert Hegfield, a bank manager at First Star Bank, testified that the MasterCuts located in the Ashtabula Mall placed its nightly deposits in the Star Bank depository, in the mall. He attested that the bank did not receive a night deposit for May 13, 2000, May 25, 2000, and May 27, 2000.
Pam Canter ("Canter"), a manager of the MasterCuts at the Ashtabula Mall, testified that two employees are responsible for closing out the register, at the end of each business day. Which of the store's eleven employees are responsible for closing out the register is dependent upon who is scheduled to work.
One of the two employees responsible for performing the close out procedure counts all the money in the cash drawer and enters the quantity of each denomination of currency and the total number of checks into the computer. The same employee prints a computer receipt, summarizing the cash drawer data and listing the names of both employees responsible for that evening's close out. The employee then places the computer receipt and the money in a deposit bag. The other employee responsible for the close out carries the deposit bag to the bank depository and, using the depository key, places it in the depository.
Canter testified that Judith Elswick was one of the closing employees on both May 13, 2000 and May 27, 2000. On May 13, 2000, the close out reflected $1,583 in currency and $500.66 in checks. On May 27, 2000, the deposits for both May 25, 2000 and May 27, 2000 were made together. Canter testified that the close out for May 25, 2000 reflected $1,048 in currency and $245.07 in checks. The close out for May 27, 2000 reflected $1796.50 in currency and $444.85 in checks. Thus, the total deposit for May 27, 2000 consisted of $2,844.50 in currency and $689.92 in checks. Canter testified that Judith told her that appellant brought both deposit bags to the bank depository, on May 27, 2000.
Becky Hawk ("Hawk"), a cosmetologist at MasterCuts, testified that, on May 13, 2000, both Judith and appellant walked the night deposit bag to the bank depository, with appellant carrying the deposit bag. Hawk attested that, on May 27, 2000, Judith completed the close out procedure and appellant, alone, took the night deposit bag to the bank depository.
Jodie Pananen ("Pananen"), another cosmetologist employed by MasterCuts, testified that appellant, alone, took the deposit to the bank depository, on May 27, 2000. Pananen attested that appellant also carried the deposit bag to the bank depository, on May 13, 2000; however, she was only "99 percent sure that appellant and Judith both walked the bag [to the bank depository]."
The prosecutor then called appellant's wife, Judith. Appellant's counsel moved to exclude Judith's testimony arguing that her testimony was not voluntary, and thus, she was incompetent to testify under R.C. 601(B). The court overruled appellant's motion, stating that he had previously ruled on the issue.
Judith testified that she completed the close out procedure, on May 13, 2000. Then, she took the deposit bag and walked in the direction of the bank depository; however, instead of placing it in the bank depository, she gave it to her husband, who was waiting in the car. Judith testified that, on May 27, 2000, she completed the close out procedure, handed both the May 25, 2000 and May 27, 2000 deposit bags to appellant, and that he did not deposit the bags in the bank depository, but put them "in his pants."
Judith further attested that, during a visit to her husband in jail, appellant asked her to take the blame for the crimes. She reported appellant's request to Detective Robinson. On cross-examination, appellant admitted that she gave two statements to the police. In the first statement, which was made immediately after she and her husband were arrested, Judith implicated appellant. Subsequently, Judith told the prosecutor that she did not want to testify against her husband. In her second statement, Judith clarified that when she had previously stated that appellant made her commit these crimes, he did not actually hold a gun to her head and "make her" engage in the crimes.
Also on cross-examination, appellant's counsel introduced a letter that Judith had written to appellant while he was in jail. In the letter, Judith stated, "I don't want you to worry. I will make everything all right at court." On the stand, Judith explained that, when she wrote that her testimony would make everything all right, she meant that people would know that appellant did not act alone in committing the crimes.
The jury found appellant guilty on all four counts of theft. At sentencing, the trial court merged Counts Two and Four and Counts One and Three. Appellant was sentenced to twelve months imprisonment on Counts One and Three, and twelve months imprisonment on Counts Two and Four, to be served consecutively.
From this decision and sentence, appellant raises the following assignments of error:
 "[1.]Appellant was denied the effective assistance of counsel in violation of the sixth amendment and fourteenth amendment of the United States Constitution and Article 1, Section 10 of the Ohio Constitution.
 [2.]The jury's verdict was against the manifest weight of the evidence as to counts one and three of the indictment."
Although not assigned as error, we will briefly address the issue of one testifying against his or her spouse charged with a crime.
Pursuant to Evid.R. 601(B), "every person is competent to be a witness except: * * * [a] spouse testifying against the other spouse charged with a crime except when * * * the testifying spouse elects to testify." "Under Evid.R. 601(B), a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial judge must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify." State v. Adamson (1995),72 Ohio St.3d 431, 1995-Ohio-199, syllabus.
Review of the record reveals that the court engaged in the following colloquy with Judith during the hearing on appellant's motion in limine:
 "THE COURT: You understand it is your decision to make. It's your decision to make whether you elect to testify.
"[JUDITH] Yes.
 "THE COURT: And it's up to you, your choice. It's a voluntary choice as to whether you're going to testify or not. * * *.
On February 21, 2001, the court overruled appellant's motion in limine, finding that appellant had voluntarily elected to testify against her husband in accordance with Evid.R. 601(B)(2). Thus, review of the record demonstrates that Judith's election was voluntarily made and Judith was competent to testify against appellant.
"[A]lthough a spouse may be competent to testify in a criminal trial, R.C. 2945.42 confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication made or act done during coverture unless a third person was present or one of the other specifically enumerated exceptions contained in the statute is applicable." State v. Rahman (1986), 23 Ohio St.3d 146, 149. Appellant did not specifically object to Judith's testimony on the basis of spousal privilege, but objected on the basis of competency under Evid.R. 601(B). Thus, appellant has waived the privilege for spousal communications or acts. See State v. Henness, 79 Ohio St.3d 53, 59, 1997-Ohio-405; Statev. Savage (1987), 30 Ohio St.3d 1, 4.
In appellant's first assignment of error, he asserts that he was denied effective assistance of counsel, since his trial counsel failed to address the inconsistencies in the prosecution witnesses' testimony during his closing argument to the jury.
To prove ineffective assistance of counsel, appellant must meet the following two pronged test:
 "First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. DiMeolo, (Sept. 30, 1992), 11th Dist. App. No. 91-A-1680, 1992 Ohio App. LEXIS 5045, quoting Strickland v. Washington (1984), 466 U.S. 668,
687.
Regarding the first requirement, we note that there is a strong presumption that a trial counsel's performance falls within the wide range of reasonable professional service. Thus, counsel's performance will not be deemed ineffective unless a defendant shows that it fell below an objective standard of reasonable representation. State v. Bradley
(1989), 42 Ohio St.3d 136, 142, citing Strickland, supra. Further, "[a] defendant must overcome the presumption that trial counsel's conduct was a strategic and tactical decision." State v. Wright, 11th Dist. No. 2000-P-0128, 2002 Ohio 1432.
As to the second requirement, to warrant reversal "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694.
In this case, appellant claims that his trial counsel rendered ineffective assistance when he failed to point out the inconsistencies in the prosecution witnesses' testimony, during closing argument. Appellant notes that Hawk and Pananen testified that both Judith and appellant took the deposit bag to the bank depository on May 13, 2000. However, Judith testified that she alone took the bank deposit bag from MasterCuts.Closing argument, including the waiver thereof, is a matter of trial strategy. State v. Burke, 73 Ohio St.3d 399, 405, 1995-Ohio-290. Given the strong presumption that trial counsel's performance fell within the range of reasonable assistance, trial counsel's actions must be viewed as tactical decisions, and do not rise to the level of ineffective assistance.
Further, appellant failed to demonstrate that there is a reasonable probability that, but for his trial counsel's errors, the outcome of the case would be different. The discrepancies in the prosecution witnesses' testimony regarded whether or not appellant, alone, or with Judith, took the deposit bags to the bank depository. In order to prove theft, under R.C. 2913.02(1), the state was only required to show that appellant, with purpose to deprive the owner of property, knowingly obtained or exerted control over the property without the owner's consent. Thus, the inconsistencies do not go to any elements of the offense. The transcript contains substantial evidence upon which the trier of fact could reasonably conclude that all the elements of theft were proven, beyond a reasonable doubt. Accordingly, we cannot conclude that the outcome of the trial would have been different had appellant's trial counsel's closing argument been different. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, he argues that the jury's verdict was against the manifest weight of the evidence because the prosecution witnesses' testimony was inconsistent and contradictory. In support of this argument, appellant argues that several of the factors set forth in State v. Mattison (1995), 23 Ohio App.3d 10, were not met.
This court has previously held that "the eight factors listed inMattison are merely guidelines to be considered when weighing the evidence and they do not create a new standard to be applied to manifest weight claims." State v. Harris (Apr. 10, 1998) 11th Dist. No. 96-T-5512, 1998 Ohio App. LEXIS 1540, at *8.
When determining whether a verdict was against the manifest weight of the evidence, the reviewing court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and "determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St. 380, 387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
A reviewing court will not reverse a guilty verdict as being against the weight of the evidence if there exists substantial evidence upon which a trier of fact could reasonably have concluded that the prosecution had proven every element of the offense, beyond a reasonable doubt. State v. Brown (1988), 38 Ohio St.3d 505, paragraph four of the syllabus.
In the instant case, through the testimony of its witnesses, the prosecution proved each of the elements of theft. Hawk, Pananen and Judith implicated appellant in the four thefts. As noted supra, the inconsistencies in their testimony do not go to any elements of the offense of theft. Based on the foregoing, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's second assignment of error is without merit.
The judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.
WILLIAM M. O'NEILL, P.J., DIANE V. GRENDELL, J., concur.