OPINION
{¶ 1} Defendant-appellant, Michael G. Molinari, appeals his conviction and sentence in the Mason Municipal Court for operating a motor vehicle while under the influence.
 {¶ 2} On January 5, 2006, appellant was found walking on State Route 42 by two of his employees, Nicholas Rakel and Tom Mellen. Upon noticing that appellant was talking to himself, Rakel and Mellen drove up to him and told him they were going to take him home. Appellant resisted at first, but eventually got into Rakel's car. Appellant told them he had *Page 2 
been drinking and needed to retrieve his vehicle, which he had left at a local area bar.
 {¶ 3} Upon arriving at the bar, appellant said that he did not have enough money to pay his $15 bar tab. Rakel paid appellant's tab and the three of them went to Rakel's residence in the city of Mason, in Warren County, Ohio, with Mellen driving appellant in appellant's car and Rakel following them in his vehicle. Along the way, appellant tried to get Mellen to stop the car so that he could get out, but Mellen refused to do so. Appellant also made statements at this time indicating that he was going to kill himself.
 {¶ 4} When they arrived at appellant's house, appellant went inside where his wife, Joanna,[1] was, and started speaking in a very agitated manner. He began pacing around the house, stating repeatedly, "give me a bottle, I need one more night to party." He then got into his mini-van, which was parked in the driveway, with Rakel's vehicle parked immediately behind it. As he backed out of the driveway, he tried to maneuver his car around Rakel's, but when he did so, he clipped the front end of Rakel's vehicle. Joanna ran out into the yard to try to stop him, but he continued to drive through the yard, across the sidewalk, and onto the road, where he drove off at a speed that Rakel would later describe as "excessively fast for a residential street."
 {¶ 5} Rakel and Mellen got in Rakel's car and started following appellant. They also called 911 and provided a description of appellant's car. When appellant saw that he was being followed, he turned around and drove back to his residence. Rakel and Mellen followed appellant back to his residence and went inside upon realizing that Joanna was still inside the residence and that appellant posed a potential threat to her.
 {¶ 6} Once inside, Rakel and Mellen saw appellant acting much like he had before, though even more agitated, and repeatedly saying "give me a bottle," "I want to party one *Page 3 
more time," and "you can't control me." At one point appellant overturned a chair and made threats against Joanna. Rakel and Mellen tried to calm him down as they waited for the police to arrive. Rakel took appellant's keys to his vehicles to keep appellant from being able to get to them because it was obvious to him that appellant was intoxicated, and he did not want appellant to leave. When the police came to appellant's residence, appellant told Rakel, "Nick go get rid of the cops."
 {¶ 7} Sergeant Peter Schultz and Officer Scott Miller of the Mason Police Department arrived on the scene and noticed that the vehicle they pulled behind was damaged. Appellant's wife gave Sgt. Schultz permission to enter the home. Sgt. Schultz noticed that appellant's eyes were glassy and somewhat red and bloodshot. When he got appellant up on his feet, he detected a strong odor of an alcoholic beverage on appellant's person. Sgt. Schultz also noticed that appellant was unsteady on his feet, and he had to make sure that appellant did not fall back in the chair.
 {¶ 8} When Officer Miller walked over to appellant, he detected the same things about him that Sgt. Schultz had detected. Officer Miller also noticed that appellant was starting to raise his voice and becoming "a little more vocal," and heard appellant say that there was really no reason to live. At that point, the officers called a life squad for appellant. At Sgt. Schultz's request, Officer Miller administered a horizontal gaze nystagmus test to appellant, and observed all six of the six indicators of intoxication that the HGN test is designed to detect.
 {¶ 9} The officers placed appellant under arrest and charged him with operating a motor vehicle under the influence of alcohol in violation of Mason Codified Ordinance 333.01(a)(1)(A), a misdemeanor of the first degree, and leaving the scene of an accident in violation of Mason Codified Ordinance 335.13, a misdemeanor of the second degree.
 {¶ 10} On March 28, 2006, appellant was tried on the charges by the bench. Plaintiff- *Page 4 
appellee, the city of Mason, presented the testimony of Rakel, Mellen, Sgt. Schultz, and Officer Miller, who testified to the facts related above. Appellee also called appellant's wife, Joanna, to the witness stand, without objection from appellant. Joanna testified that appellant had a mental breakdown on the day of the incident, but stated that he did not appear to her to have been drinking, rather he appeared to her have been "very angry [and] agitated."
 {¶ 11} In cross-examining appellee's witnesses, appellant's trial counsel sought to establish that appellant was not drunk on the day in question, but only angry, agitated, and even suicidal, and his behavior was misinterpreted as intoxication by the police and others. Appellant himself chose not to testify at trial.
 {¶ 12} The trial court found appellant not guilty of the charge of leaving the scene of an accident, but guilty of the charge of operating a motor vehicle under the influence. The court sentenced appellant to serve 120 days in jail, imposed a 180-day suspension of his driving privileges except for driving to and from work and court appointments, and ordered him to pay $250 in fines and court costs. The court suspended appellant's jail sentence on the condition that he comply with the terms of his community control sanctions and probation.
 {¶ 13} Appellant now appeals from his conviction and sentence, raising the following assignments of error.
 {¶ 14} Assignment of Error No. 1:
 {¶ 15} "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND APPELLANT'S WIFE INCOMPETENT TO TESTIFY AT TRIAL."
 {¶ 16} Appellant argues that the trial court committed reversible error when it failed to find that his wife was incompetent pursuant to Evid.R. 601 to testify as a witness for appellee. We disagree with this argument.
 {¶ 17} Evid.R. 601 states in pertinent part: *Page 5 
 {¶ 18} "Every person is competent to be a witness except:
 {¶ 19} "* * *
 {¶ 20} "(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:
 {¶ 21} "(1) A crime against the testifying spouse or a child of either spouse is charged;
 {¶ 22} "(2) The testifying spouse elects to testify."
 {¶ 23} "Under Evid.R. 601(B), a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial court must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify." State v. Adamson,72 Ohio St.3d 431, syllabus, 1995-Ohio-199. See, also, State v. Henness,79 Ohio St.3d 53, 57, 1997-Ohio-405 (following Adamson).
 {¶ 24} In this case, the trial court failed to make an affirmative determination on the record that appellant's wife elected to testify, with knowledge of her right to refuse, as required by Adamson. However, appellant failed to raise this issue at trial.
 {¶ 25} Evid.R. 103 provides that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party has been affected, and in the case where the ruling is one that admits evidence, the party objecting to the evidence makes a timely objection to the evidence, stating the specific ground of the objection if the specific ground was not apparent from the context. See Evid. R. 103(A)(1). Generally, failure to object to the introduction of evidence at trial constitutes a waiver of any challenge to the evidence.State v. Roberts, 156 Ohio App.3d 352, 356, 2004-Ohio-962.[2] *Page 6 
 {¶ 26} Crim.R. 52(B) allows a reviewing court to take notice of "plain errors" or defects affecting substantial rights even though they were not brought to the attention of the [trial] court." See, also, Evid.R. 103(D) (nothing in Evid.R. 103 precludes a reviewing court from taking notice of plain errors affecting substantial rights even though they were not brought to the attention of the trial court). "`Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' State v. Long (1978), 53 Ohio St.2d 91 * * *, paragraph three of the syllabus. `Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.' State v. Moreland (1990), 50 Ohio St.3d 58, 62 * * *."Adamson, 72 Ohio St.3d at 434-435.
 {¶ 27} Here, appellant failed to call the issue of spousal competency to the trial court's attention, and thus waived all but plain error. See Evid.R. 103(D). Moreover, any error in admitting the testimony of appellant's wife did not constitute plain error under the facts of this case. Cf. Adamson at 435 (finding that the outcome of defendant's trial "would certainly have been different had his wife not testified against him").
 {¶ 28} At trial, appellant's wife, Joanna, testified that appellant had a "breakdown" on the day in question and wound up in the hospital. She acknowledged that she had seen her husband drink alcohol in the past and that there was alcohol in their basement. However, she testified that while appellant looked very angry, agitated, and upset on the day in question, he did not seem to have been drinking that day. She also testified that she did not want appellant to have the keys to his automobile because she was worried for him since he had already been through a mental breakdown earlier in the week, but she stated that she was not worried about him drinking on that day. *Page 7 
 {¶ 29} A review of the testimony of appellant's wife shows that the testimony tended to help rather than hurt appellant, and, therefore, it cannot be said that but for the error in not ruling the testimony of appellant's wife to be incompetent, the outcome of the trial would clearly have been different. Adamson, 72 Ohio St.3d at 435, quotingMoreland, 50 Ohio St.3d at 62. Additionally, the evidence of appellant's guilt on the charge of operating a motor vehicle under the influence was overwhelming, and, therefore, declaring the testimony of appellant's wife to be incompetent would not have changed the outcome of the proceedings. Id.
 {¶ 30} Appellant's first assignment of error is overruled.
 {¶ 31} Assignment of Error No. 2:
 {¶ 32} "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND APPELLANT'S WIFE'S TESTIMONY FELL WITHIN O.R.C. 2945.42, THE SPOUSAL PRIVILEGE."
 {¶ 33} Appellant argues that the trial court committed reversible error by failing to exclude his wife's testimony on grounds that the testimony fell within the spousal privilege set forth in R.C. 2945.42. We disagree with this argument.
 {¶ 34} R.C. 2945.42 states in pertinent part:
 {¶ 35} "Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness * * *."
 {¶ 36} While Evid.R. 601(B) is a rule of procedure that governs thecompetency of spouses to testify against each other regarding criminal activity, Adamson, 72 Ohio St.3d at 433, R.C. 2945.42 is a rule that "confers a substantive right upon the accused to excludeprivileged spousal testimony concerning a confidential communication made or act done during coverture unless a third person was present or one of the other specifically *Page 8 
enumerated exceptions contained in the statute is applicable." (Emphasis added.) State v. Rahman (1986), 23 Ohio St.3d 146, 149.
 {¶ 37} The Ohio Supreme Court has noted that "there are significant differences between a rule granting a particular privilege and one which defines a class of witnesses as incompetent." State v. Savage (1987),30 Ohio St.3d 1, 4. "[Privileges are generally asserted to block the introduction of testimony on particular subjects which yet allows the witness to give unimpeded testimony on other subjects. However, a rule of incompetency defines which witness may not offer testimony and then sets forth limited exceptions for when witnesses may be heard." Id.
 {¶ 38} "Under R.C. 2945.42, an accused may prevent a spouse from testifying about private acts or communications." Adamson,72 Ohio St.3d at 433. However, if the accused fails to raise a specific objection to his spouse's testimony regarding such matters, the accused waives his right to raise the issue on appeal. See Henness, 79 Ohio St. at 59.
 {¶ 39} In this case, appellant never raised a specific objection to his wife's testimony on the grounds that it violated the spousal privilege in R.C. 2945.42. Therefore, he has waived this issue. Id.
 {¶ 40} Furthermore, any error the trial court made in allowing appellant's wife to testify was harmless under the circumstances of this case. Appellant argues that the "vast majority" of his wife's testimony breached the privilege for spousal acts and communications sought to be protected under R.C. 2942.42, but the only examples he can point to is that his wife testified that there was alcohol in their basement, and she had seen appellant in the past when he had been drinking.
 {¶ 41} However, the vast majority of communications and acts between appellant and his wife took place in front of third persons, namely, Rakel, Mellen, Sgt. Schultz, and Officer Miller, and, therefore, the spousal privilege in R.C. 2945.42 clearly does not apply. See *Page 9 Rahman, 23 Ohio St.3d at 149. Furthermore, the testimony of appellant's wife that there was alcohol in their basement did not play a prominent role in appellant's conviction, as there was overwhelming evidence in the record that appellant had been drinking alcohol on the day of his arrest, including appellant's own admissions to his friends and the police. Cf. id. at 150.
 {¶ 42} Moreover, appellant's wife testified that while she had seen appellant when he had been drinking in the past, he did not seem as if he had been drinking on the day of his arrest. Instead, she testified, appellant only seemed "very angry" and "agitated." This testimony supported the defense's theory that appellant was suicidal on the day of his arrest, and his condition was misinterpreted by the police and others as intoxication. Therefore, the testimony of appellant's wife tended to help rather than hurt him, and any error in admitting that testimony was harmless. Cf. Rahman, 23 Ohio St.3d at 150 (where the court found it was "difficult to minimize the prejudicial impact" of the testimony of defendant's wife in that case).
 {¶ 43} Appellant's second assignment of error is overruled.
 {¶ 44} Assignment of Error No. 3:
 {¶ 45} "THE DEFENDANT-APPELLANT'S PECUNIARY [sic] RIGHTS WERE AFFECTED BY THE INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL."
 {¶ 46} Appellant argues that his trial counsel provided him with constitutionally ineffective assistance of counsel. We disagree with this argument.
 {¶ 47} In order to prevail on an ineffective assistance of counsel claim, a criminal defendant must make the two-pronged showing set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness." Id. at 687-688. Judicial review of trial counsel's performance must be "highly deferential," and the reviewing court must indulge a strong presumption that counsel's conduct is professionally reasonable and, *Page 10 
under the circumstances, might be viewed as sound trial strategy. Id. at 689.
 {¶ 48} Second, a defendant must show that his defense counsel's performance prejudiced him. Id. at 687. This requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A failure to make a sufficient showing on either the "performance" or "prejudice" prong of the Strickland standard will doom a defendant's ineffective assistance of counsel claim. See id. at 697.
 {¶ 49} Appellant argues that his trial counsel provided him with ineffective assistance by failing to challenge his wife's testimony on the grounds of spousal privilege and competence. However, for the reasons set forth in our response to appellant's first two assignments of error, we find that appellant has failed to demonstrate that the outcome of his trial would have been different if he had raised such challenges at trial. Id. at 694.
 {¶ 50} Moreover, the decision by appellant's trial counsel to allow appellant's wife to testify may have been a deliberate trial tactic on his part, since her testimony actually served to buttress the defense's theory of the case, i.e., appellant was not drunk on the day in question, but only angry, agitated, and suicidal, and his behavior was misinterpreted as intoxication by the police and others. This tactical decision on the part of appellant's trial counsel is entitled to wide deference from a reviewing court. Id. at 689.
 {¶ 51} Appellant also argues that his counsel provided him with constitutionally ineffective assistance by failing to file a motion to suppress the results of the HGN test conducted by Officer Miller on the grounds that the officer performed the test incorrectly. Alternatively, he asserts that his trial counsel should have at least challenged the weight and sufficiency of appellee's evidence regarding the HGN test at trial. We find these arguments unpersuasive. *Page 11 
 {¶ 52} "The HGN test is one of several field sobriety tests used by police officers in detecting whether a driver is intoxicated. `Nystagmus' is an involuntary jerking of the eyeball. `Horizontal gaze nystagmus' refers to a jerking of the eyes as they gaze to one side. The position of the eye as it gazes to one side is called `maximum deviation.' In administering the test, an officer takes some object, a pen for example, and places it approximately twelve to fifteen inches in front of the suspect's nose. The officer then observes the suspect's eyes as they follow the object to determine at what angle nystagmus occurs. The more intoxicated a person becomes, the less the eyes have to move toward to the side before nystagmus begins. * * * Other signs of intoxication include distinct nystagmus at maximum deviation and the inability of the suspect's eyes to smoothly follow the object." (Citations omitted.) State v. Homan, 89 Ohio St.3d 421, 422, fn. 1,2000-Ohio-212.
 {¶ 53} Homan required that field sobriety tests be administered in strict compliance with testing procedures. See id. at paragraph one of the syllabus. However, as appellant acknowledges, Homan was legislatively overruled by 2001 Am. Sub. S.B. 163, which became effective April 9, 2003. See R.C. 4511.19(D)(4)(b). Under that law, the prosecution only needs to establish by clear and convincing evidence that in performing a field sobriety test like the HGN test, the law enforcement officer substantially complied with generally accepted testing standards, including, but not limited to those set by the NHTSA. Id.
 {¶ 54} Appellant asserts that a review of Officer Miller's testimony demonstrates that the officer failed to perform the HGN test properly. Among other things, appellant contends that Officer Miller's testimony "indicated that he incorrectly timed his passes," and "raises question about the number of passes in the order of the test." He also faults his trial counsel for not asking "if other crucial procedures were followed."
 {¶ 55} However, contrary to what appellant asserts, a review of Officer Miller's testimony shows that the officer was not asked to testify about the issues regarding the HGN *Page 12 
test that appellant is now raising on appeal. Instead, appellant's trial counsel raised the issue of whether the HGN test was reliable when it was administered to someone who was in a highly agitated, even suicidal, state as was appellant on the date he was arrested. The decision of appellant's trial counsel to proceed with this line of attack on the reliability of the HGN test, rather than to follow the approach now set forth by appellant on appeal, was a decision involving trial tactics and strategy that is owed great deference by this court. SeeStrickland, 466 U.S. at 689.
 {¶ 56} Furthermore, appellee presented an overwhelming amount of evidence in proving its charge that appellant operated a motor vehicle while under the influence of alcohol other than the results of the HGN test that Officer Miller performed on appellant. As one commentator has observed, "[r]arely will the [HGN test] comprise the bulk of the evidence against the accused, so therefore, it is unlikely that its presence or absence will have any major effect on the case." Painter, Ohio Driving Under the Influence Law (2007 Ed.) 52, Section 3:9.
 {¶ 57} Here, the bulk of appellee's case against appellant was not dependent on the HGN test that Officer Miller performed on appellant. Therefore, the failure of appellant's trial counsel to have the results of the HGN test suppressed or to oppose that evidence more vigorously at trial would not have changed the outcome of these proceedings.
 {¶ 58} Appellant's third assignment of error is overruled.
 {¶ 59} Assignment of Error No. 4:
 {¶ 60} "THE DEFENDANT-APPELLANT'S CONVICTION OF THE MASON MUNICIPAL CODE 333.01 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 61} Appellant argues that his conviction for operating a motor vehicle under the influence was contrary to the manifest weight of the evidence. We disagree with this argument. *Page 13 
 {¶ 62} In considering a manifest weight of the evidence challenge, an appellate court must review the entire record, weighing the evidence and all reasonable inferences that can be drawn from it, and consider the credibility of the witnesses, to determine whether the trier of fact clearly lost its way in resolving conflicts in the evidence, and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 63} While a reviewing court must consider the credibility of the witnesses in evaluating a manifest weight of the evidence claim, the court must be mindful of the fact that the weight to be given the evidence and the credibility of the witnesses are primarily matters for the jury or trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Moreover, the decision of the jury or trier of fact is owed deference since they are "`best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" State v. Miles (Mar. 18, 2002), Butler App. No. CA2001-04-079, quoting Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 64} Appellant was convicted of operating a motor vehicle under the influence in violation of Mason Codified Ordinance 330.01(a)(1)(A), which states in pertinent part:
 {¶ 65} "(a) Driving Under the Influence.
 {¶ 66} "(1) No person shall operate any vehicle within this Municipality, if, at the time of the operation, any of the following apply:
 {¶ 67} "A. The person is under the influence of alcohol, a drug of abuse, or combination of them."
 {¶ 68} Appellant argues that the trial court's finding that he was under the influence of alcohol at the time he was operating a motor vehicle is contrary to the manifest weight of the *Page 14 
evidence. We disagree with this argument.
 {¶ 69} Mason Codified Ordinance 333.01(a)(1)(A) is similar to R.C.4511.19(A)(1)(a), which states in pertinent part:
 {¶ 70} "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 {¶ 71} "(a) The person is under the influence of alcohol, a drug of abuse, or combination of them."
 {¶ 72} The phrase "under the influence of influence of intoxicating liquor" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." Toledo v. Starks (1971), 25 Ohio App.2d 162,166. See, also, State v. Steele (1952), 95 Ohio App. 107, 111 ("[B]eing `under the influence of alcohol or intoxicating liquor' means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess").
 {¶ 73} The definition of "under the influence" of alcohol or intoxicating liquor found in cases like Starks and Steele is used in the Ohio Jury Instructions to define the term "under the influence" for purposes of R.C. 4511.19(A)(1). See 4 Ohio Jury Instructions (2007), 898, Section 711.19(6).
 {¶ 74} In this case, the state presented overwhelming evidence that appellant operated a motor vehicle while under the influence of alcohol. Appellant was found by two of *Page 15 
his employees, Rakel and Mellen, walking along a highway, talking to himself. He admitted to Rakel and Mellen that he had been drinking and had left his vehicle at a bar. When the three of them went to the bar, one of the employees paid appellant's $15 bar tab. Appellant, himself, has asked us to take judicial notice of the fact that in 2007, alcoholic beverages cost three dollars a piece. If that is true, then there is evidence to show that appellant, by his own admission, had purchased at least five alcoholic beverages at the time of his arrest.
 {¶ 75} After appellant was driven home, he went back out, even though his car was blocked by Rakel's vehicle. Appellant attempted to maneuver around Rakel's vehicle, but ended up striking and damaging it. Despite causing the accident, appellant drove over his yard and then out onto the street, traveling at a high rate of speed. Rakel testified that appellant was obviously drunk on the day in question, and both he and Mellen were concerned about the welfare of appellant and his wife as a result of appellant's behavior.
 {¶ 76} Sgt. Schultz and Officer Miller both noticed that appellant's eyes were glassy and bloodshot, and that he had trouble standing. Appellant admitted to the officers that he had been drinking. When Officer Miller performed the HGN test on appellant, he observed all six of six indicators of intoxication the HGN test is designed to detect. The evidence presented in this case, when viewed in its entirety, provided overwhelming proof that appellant was guilty of the offense of operating a motor vehicle under the influence of alcohol.
 {¶ 77} Appellant again argues in this assignment of error that Officer Miller's testimony shows that the officer failed to perform the HGN test correctly. However, we reject this argument for the same reasons stated in our response to appellant's third assignment of error. Among other things, even if trial counsel had pointed out the mistakes Officer Miller allegedly made in conducting the HGN test, it would not have changed the outcome of these proceedings, as the remaining evidence presented by appellee provided overwhelming proof *Page 16 
of appellant's guilt on the charge of operating a motor vehicle while under the influence of alcohol.
 {¶ 78} Appellant's fourth assignment of error is overruled.
 {¶ 79} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] In his testimony, Rakel referred to Joanna Molinari as "Joy," but Mrs. Molinari identified herself at trial as "Joanna." Therefore, we shall refer to her as "Joanna" rather than "Joy."
[2] See 1 Ginannelli Snyder, Evidence (2006), 388, Section 601.8, (failure to object at trial to spouse's testimony on competency grounds waives the objection), citing, in fn. 83, Locke v. State,33 Ohio App.3d 445. See, also Adamson, 72 Ohio St.3d at 434-435, (where the Ohio Supreme Court indicated that when a defendant failed to object to his wife's testimony at trial on the grounds that the testimony violated the spousal competency rule in Evid.R. 601[B], the error could be recognized on appeal only because the erroneous introduction of the wife's testimony in that case rose to the level of plain error under Crim.R. 52[B]). *Page 1