OPINION
{¶ 1} Defendant-appellant, Joshua Smith, appeals his conviction in the Fayette County Court of Common Pleas for murder.
 {¶ 2} In the early morning hours of January 1, 2006, the Washington Court House Police Department received a call from appellant who reported that he witnessed the murder of Michelle Morrison. After investigating appellant's report further, the police discovered the lifeless body of Morrison located in the bedroom of a now vacant home, a home in which *Page 2 
appellant had lived two months earlier before it sustained fire damage.
 {¶ 3} Later that same morning, while being questioned by police, appellant claimed J.M., a former friend and current Chillicothe resident, got into an argument with Morrison and hit her on the head with a PVC pipe while the trio was walking from a local bar. Upon investigating appellant's claim further, the police discovered that J.M. was not in Washington Courthouse that morning. Thereafter, following a police investigation, appellant was arrested and indicted for Morrison's murder.
 {¶ 4} At trial appellant testified that his original statement to police implicating J.M. in Morrison's murder was false. Instead, appellant testified that he left the bar with Morrison that night, but, after she had walked ahead of him, he saw her attacked and beaten by two men smoking crack cocaine in an alley behind his former residence. Appellant also testified that after seeing Morrison attacked he became scared, ran into the vacant home, and hid in a small furnace room. Thereafter, while appellant hid in the furnace room, the two men dragged Morrison inside the house and hit her with a PVC pipe. Although he claimed to know one of the men who attacked Morrison, appellant refused to identify the attacker because he felt threatened and believed that his family was in danger. A Fayette County jury found appellant guilty and he was sentenced to serve a mandatory term of fifteen years in prison.
 {¶ 5} Appellant appeals his conviction, raising seven assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT [APPELLANT'S] MOTION TO SUPPRESS HIS STATEMENTS MADE TO LAW ENFORCEMENT."
 {¶ 8} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress statements he made to police during three police interviews conducted on January 1 and January 6, 2006. Specifically, appellant claims that his *Page 3 
statements to police were made while he was in custody, and therefore, obtained in violation of his Fifth Amendment right against self-incrimination because he was either not read his Miranda warnings, or did not validly waive those rights. This argument lacks merit.
 {¶ 9} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 329, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact, and therefore, is in the best position to resolve factual questions and evaluate witness credibility. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402. The appellate court then determines, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 10} It is well-established that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." State v. Huysman, Warren App. No. CA2005-09-107,2006-Ohio-2245, ¶ 13, quoting Miranda v. Arizona (1966), 384 U.S. 436,444, 86 S.Ct. 1602. The warnings outlined in Miranda are only required when there has been such a restriction on the person's freedom as to render him in custody. Id., citing Oregon v. Mathiason (1977),429 U.S. 492, 494, 97 S.Ct. 711.
 {¶ 11} In determining whether an individual was in custody, a court must examine the totality of the circumstances surrounding the interrogation. State v. Coleman, Butler App. No. CA2001-10-241, 2002-Ohio-2068, ¶ 23. "[T]he ultimate inquiry is simply whether there [was] a `formal restraint or restraint on freedom of movement' of the degree associated with a formal arrest." Huysman at ¶ 15, quotingCalifornia v. Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517. In turn, a person is in custody if he is formally placed under arrest prior to a *Page 4 
police interrogation, or, if not formally arrested, when there is a significant restraint on his freedom of movement. Huysman at ¶ 15, citing State v. Staley (May 8, 2000), Madison App. No. CA99-08-019, at 7.
 {¶ 12} Additionally, it should be noted that a person is not in custody merely because he is questioned at the police station or because he is considered a suspect. Mathiason, 429 U.S. at 495. In fact, "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect, is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." Huysman at ¶ 16, quoting Stansbury v. California
(1994), 511 U.S. 318, 324, 114 S.Ct. 1526. Further, a person is not in custody simply because they are transported to the police station by a police officer. State v. Warren (Oct. 25, 1996), Montgomery App. No. 15202, 1996 WL 612858, at *8. This is especially true when the person is free to leave at any time. Id. Instead, the ultimate determination of whether a person is in custody depends "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Huysman
at ¶ 16.
 {¶ 13} Appellant, in regards to his first police interview, claims that the trial court erred in finding that he was not in custody because he was questioned as a suspect, not a witness, and therefore, should have been given his Miranda warnings. However, contrary to appellant's claim, a determination of whether he was being questioned as a suspect is not dispositive of the custody issue, but rather, such a determination depends on the objective circumstances of the interrogation. Mathiason at 495; Huysman at ¶ 16.
 {¶ 14} Appellant called the police on January 1, 2006 at approximately 4:00 a.m. to report that he was a witness to Morrison's murder. In response, the police went to appellant's house, found him in a distressed state, and transported him to the police station in an effort to obtain his statement. Once he arrived at the police station, appellant was placed in an *Page 5 
interview room where he met with Detective Jeff Funari. At the suppression hearing, Det. Funari testified that the door to the interview room was kept open, that appellant was given water, that appellant was able to use the restroom, and that he was never arrested or placed in custody. Det. Funari also testified that even though appellant was at the police station for at least three hours, his interview lasted approximately 20 minutes and that appellant was free to leave once it concluded.[1]
 {¶ 15} Considering the foregoing circumstances, the trial court determined that appellant was being questioned merely as a witness, not in custody, and not deprived of his freedom in any significant way. We find no error in the trial court's conclusion.
 {¶ 16} Next, in regards to his second police interview conducted several hours later, appellant argues that "the trial court erred in concluding that [appellant] validly waived his Miranda rights," and therefore, his statements should have been suppressed.
 {¶ 17} On January 1, 2006 at approximately 1:00 p.m., after being transported by police back to the police station, appellant was interviewed for a second time. Here, unlike his previous interview, appellant's second interview was conducted by Sergeant Russell Martin Lowe in an upstairs office. At the suppression hearing, Sgt. Lowe testified that he advised appellant of his Miranda rights and appellant provided him with an oral statement. Thereafter, when appellant told Sgt. Lowe that he was tired and that he wanted to go home, appellant left the police station.
 {¶ 18} The trial court, contrary to appellant's claim, did not conclude, let alone discuss, whether appellant waived hisMiranda rights at this interview. Instead, the trial court found that appellant was given his Miranda warnings "even though [he] was not in custody and was *Page 6 
free to leave." We find no error in this conclusion.
 {¶ 19} Finally, in regards to his third police interview conducted on January 6, 2006, appellant again argues that the trial court erred in denying his motion to suppress because "at that point, [he] was a suspect," and that he did not voluntarily appear at the police station because he was transported there by a police officer. However, as stated above, a determination of whether a person was being questioned as a suspect, or whether that person was transported to the police station by the police, is not dispositive of the custody issue. Mathiason,429 U.S. at 495; Huysman, 2006-Ohio-2245 at ¶ 16. Instead, such a determination of custody depends on the objective circumstances of the interrogation.Warren, 1996 WL 613858 at *8.
 {¶ 20} After Sgt. Lowe unsuccessfully attempted to persuade appellant to take a polygraph test, he called appellant and asked him to come to the police station so that he could "just explain * * * the problems with [his previous] statements." Prior to coming to the police station, Sgt. Lowe also informed appellant that if he came to the police station that he could then leave at anytime. A short time later, appellant arrived at the police station and again met with Sgt. Lowe in an upstairs office. Thereafter, prior to being questioned, Sgt. Lowe told appellant that he was not in custody and that he did not intend to place him in custody. After he was questioned for a short time, appellant, who was now considered a suspect, asked to go home and left the police station. Based on these facts, the trial court found appellant was not in custody during the interview. We find no error in this conclusion.
 {¶ 21} In light of the foregoing, and considering the totality of the circumstances, we find no error in the trial court's determination that appellant was not in custody during the three police interviews conducted on January 1, and January 6, 2006, respectively. As a result, because appellant was not in custody during his three police interviews, a recitation of his Miranda warnings was not required, and therefore, his Fifth Amendment rights were not *Page 7 
violated. Accordingly, appellant's first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "THE TRIAL COURT ERRED WHEN IT PERMITTED [APPELLANT'S] WIFE TO TESTIFY FOR THE STATE WITHOUT DETERMINING HER COMPETENCY UNDER EVID.R. 601."
 {¶ 24} In his second assignment of error, appellant argues that the trial court committed reversible error because it failed to make an affirmative determination that T.S., appellant's wife ("Wife"), made a conscious choice to testify against him as required by Evid. R. 601. This argument lacks merit.
 {¶ 25} Evid. R. 601 states in pertinent part:
 {¶ 26} "Every person is competent to be a witness except: * * *
 {¶ 27} "(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:
 {¶ 28} "(1) A crime against the testifying spouse or a child of either spouse is charged;
 {¶ 29} "(2) The testifying spouse elects to testify."
 {¶ 30} Pursuant to Evid. R. 601(B), "a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial court must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify." Mason v.Molinari, Warren App. No. CA2006-05-056, 2007-Ohio-5395, ¶ 23, quotingState v. Adamson, 72 Ohio St.3d 431, 1995-Ohio-199, syllabus. However, "the issue of competency is waived when the defendant in a criminal case produces the spouse as a defense witness." State v. Smith, Wayne App. No. 02CA0045, 2003-Ohio-2850, ¶ 10.
 {¶ 31} Appellant filed a motion to suppress which prompted the trial court to hold a suppression hearing. During the suppression hearing, appellant called his wife to testify on *Page 8 
his behalf. Further, after the state called her to testify at trial, appellant again called his wife to testify on his behalf during his own case-in-chief. As a result, because appellant called his wife as a defense witness at the suppression hearing and again during his own case-in-chief, he waived any challenge to the issue of her competency as a witness under Evid. R. 601. Id. Therefore, appellant's second assignment of error is overruled.
 {¶ 32} Assignment of Error No. 3:
 {¶ 33} "THE TRIAL COURT ERRED BY ENTERING A JUDGMENT OF CONVICTION FOLLOWING PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT, DENYING [APPELLANT] THE RIGHT TO A FAIR TRIAL IN VIOLATION OF THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I. § 16 OF THE OHIO CONSTITUTION."
 {¶ 34} In his third assignment of error, appellant argues that the prosecutor made statements during closing argument that prejudicially affected his substantial rights and denied him a fair trial. This argument lacks merit.
 {¶ 35} The prosecution is entitled to a degree of latitude in its closing remarks. State v. Cobb, Butler App. No. CA2007-06-153,2008-Ohio-5210, ¶ 115, citing State v. Smith (1984), 14 Ohio St.3d 13. For example, the "prosecutor may comment upon the testimony and suggest the conclusions to be drawn from it." State v. Smith, Butler App. No. CA2007-05-133, 2008-Ohio-2499, ¶ 7. However, "a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused, or go beyond the evidence which is before the jury when arguing for conviction." Id. Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v. Hill, 75 Ohio St.3d 195, 204,1996-Ohio-222. Instead, prosecutorial misconduct will only be found when the remarks made during closing argument were improper and those improper remarks prejudicially affected substantial rights of the defendant. State v. Elmore, *Page 9 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62.
 {¶ 36} Further, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial due to the prosecutor's prejudicial remarks. State v. Murphy, Butler App. No. CA2007-03-073, 2008-Ohio-3382, ¶ 9, citing State v. Maurer (1984),15 Ohio St.3d 239, 266. A reviewing court "will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." Smith, 2008-Ohio-2499 at ¶ 9.
 {¶ 37} Appellant failed to raise any objections at trial regarding prosecutorial misconduct during the prosecution's closing argument. Therefore, because appellant raises the issue of prosecutorial misconduct for the first time on appeal, he has waived any challenge except for plain error. Cobb, 2008-Ohio-5210 at ¶ 117.
 {¶ 38} A plain error is any error or defect "affecting substantial rights [that] may be noticed although they were not brought to the attention of the court." Crim. R. 52(B). "Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Baldev, Butler App. No. CA2004-05-106, 2005-Ohio-2369, ¶ 12, citing State v. Long (1978), 53 Ohio St.2d 91, 95. Accordingly, an error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. Baldev at ¶ 12; State v. Krull,154 Ohio App.3d 219, 2003-Ohio-4611, ¶ 38.
 {¶ 39} Initially, it should be noted that the jury was instructed that the statements made during opening and closing arguments were not evidence. See State v. Myers, Fayette App. No. CA2005-12-035,2007-Ohio-915, ¶ 28. Therefore, we must presume that the jury followed the trial court's instructions. See State v. Manns, 169 Ohio App.3d 687,2006-Ohio-5802.
 {¶ 40} Appellant argues that his conviction should be reversed because the *Page 10 
"prosecution's closing argument was packed with improper remarks, vouching, assumption of facts that were not in evidence, and misstatements of the evidence." In support of this argument, appellant first claims that the prosecutor made prejudicial remarks which denied him a fair trial by stating that Officer Jean Boone "took a report about a stolen wallet down on East Market Street and went out there to investigate it" at approximately 2:50 a.m., thus placing her, according to appellant, "across the alley from the crime scene." However, even though Officer Boone actually testified that she took the report between 3:30 and 4:00 a.m., we fail to see how this misstatement prejudiced appellant in any significant manner, let alone denied him a fair trial. As a result, because appellant has failed to demonstrate that the prosecutor's statements had any prejudicial affect on the outcome of the trial, there is no error, let alone plain error.
 {¶ 41} Second, appellant essentially argues that the prosecutor made prejudicial remarks which denied him a fair trial when he stated that appellant had "extraordinarily short fingernails that you can't get any clippings from, [and that he] shaved [his] pubic hair, * * * the doctor said he tried but he didn't see anything in that manila envelope" to test. Appellant claims that this statement improperly suggested that appellant cut his fingernails and shaved his pubic hair to eliminate any evidence that may have implicated him in the murder. However, based on our review of the record, we find that the prosecution was merely reiterating the testimony of Dr. Albert George Gay, who testified, in pertinent part, that he "was unable to collect any fingernail cuttings because the fingernails had been cut so short * * * and then also the pubic hair had been cut or shaved so short that [he] could not collect any pubic hair." As a result, the prosecutor was not improperly misstating the evidence presented, and therefore, no error exists, much less plain error.
 {¶ 42} Third, appellant argues that the prosecutor made prejudicial remarks which denied him a fair trial by stating Phillip Henry, appellant's cellmate, was told by appellant that *Page 11 
investigators would not find any evidence on his shoes because he poured something on them. Specifically, appellant claims that the prosecutor's statement denied him a fair trial because "a BCI analyst testified that presumptive testing indicated the presence of blood on the shoes." However, based on our review of the record, the prosecutor's statement reiterated the exact testimony provided by Henry, who testified in pertinent part, that appellant told him "he poured something onto his real nice, expensive shoes * * * paint thinner, some kind of paint or something like that to cover up something * * *." As a result, the prosecutor's comment cannot be considered improper because it reiterated the exact testimony of Henry, and therefore, not in error.
 {¶ 43} Fourth, appellant argues that the prosecutor made prejudicial remarks when he "vouched for his own case" by stating; "Ladies and Gentlemen, [the police] waited two weeks to make an arrest. They wanted to make sure they had the right guy." However, based on our review of the record, we find that this statement was not improper "vouching," but instead, used to rebut appellant's claim that the police conducted a hurried investigation without eliminating all other leads prior to his arrest. See State v. Farwell, Clermont App. No. CA2001-03-041, 2002-Ohio-1912. Therefore, because we find this comment was not improper, no error exists.
 {¶ 44} Finally, appellant argues that the prosecutor made prejudicial remarks, which, according to appellant, were comments regarding his "prior bad acts." Specifically, appellant claims that the prosecutor made an improper statement by noting the police, when dispatched to appellant's home to investigate prior claims of domestic violence, would "[u]sually [find] the lights * * * on, [and see appellant and his wife] yelling and carrying on," as opposed to the morning of January 1, 2006 when the police found the house dark and did not hear any yelling. Here, the prosecutor's statement, contrary to appellant's claims, did not constitute an improper comment on appellant's prior bad acts, but instead, merely highlighted *Page 12 
what police believed to be the unusual nature of the residence when they arrived at his home that morning, and therefore, not in error.
 {¶ 45} In light of the foregoing, we find that the prosecution's closing statements were either not improper, or did not prejudice appellant so as to deny him a fair trial. Therefore, because we find no error in any of the prosecutor's statements challenged by appellant, much less plain error, his third assignment of error is overruled.
 {¶ 46} Assignment of Error No. 4:
 {¶ 47} "[APPELLANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO USE OBJECTIONS, FAILED TO EFFECTIVELY CROSS-EXAMINE WITNESSES, FAILED TO SUBPOENA WITNESSES, FAILED TO INVESTIGATE, AND FAILED TO MOVE FOR A MISTRIAL WHEN WARRANTED."
 {¶ 48} To demonstrate ineffective assistance of counsel, a defendant must establish that his counsel's representation fell below an objective standard of reasonableness, and was prejudiced from counsel's deficient performance. Strickland v. Washington (1984), 466 U.S. 668, 687-691,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 141-143. "Reversal of a conviction for ineffective assistance of counsel `requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by theSixth Amendment.'" State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 199, quoting Strickland at 687. In addition, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."Strickland at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
 {¶ 49} "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance."State v. Carver, Montgomery App. No. 21328, 2008-Ohio-4631, ¶ 112, citing Strickland at 689. "Hindsight is not permitted to distort *Page 13 
the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel."Carver at ¶ 112.
 {¶ 50} Appellant argues that his trial counsel was ineffective because he failed to object to the state calling his wife as a witness at trial. However, "the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." State v.Hale, 119 Ohio St. 3d 118, 2008-Ohio-3426, ¶ 233. Further, as was discussed above in his second assignment of error, once appellant called his wife to testify at the suppression hearing he waived any challenge as to the issue of her competency under Evid. R. 601, and therefore, no error occurred. Smith, 2003-Ohio-2850 at ¶ 10. As a result, because we find that no error occurred, appellant cannot establish prejudice due to his trial counsel's failure to object to the same. Therefore, we find appellant's claim of ineffective assistance of counsel based on his trial counsel's failure to object to the state calling his wife as a witness at trial is without merit.
 {¶ 51} Next, appellant argues that his trial counsel was ineffective because he failed to object to the "bad act" testimony of Officer Boone when she testified that appellant and his wife were "usually screaming and yelling" when she responded to domestic violence calls at their residence. Specifically, appellant claims that the failure to object to the testimony amounted to ineffective assistance because such testimony "unfairly bolstered" the state's case-in-chief. However, as stated above, the testimony of Officer Boone, which was reiterated in the state's closing argument, was not introduced in an attempt to show appellant was involved in prior bad acts, but instead, used to highlight the unusual nature of the residence when the police arrived at his home on the morning of January 1, 2006. As a result, we find appellant's claim of ineffective assistance of counsel based on the failure to object to the testimony of Officer Boone is without merit.
 {¶ 52} Appellant also argues that his trial counsel was ineffective because he failed to *Page 14 
object to "vast amounts of hearsay" testimony from Det. Funari. Specifically, appellant claims that his trial counsel was ineffective because he failed to object to Det. Funari's testimony regarding his contact with J.M., the original suspect in the murder, and the man appellant claimed had murdered Morrison in his initial interview. However, as appellant notes, and to which we agree, most of Det. Funari's testimony regarding police contact with J.M. also "came out at trial directly from them" on cross-examination. As a result, based on our review of the record, we find appellant's claim of ineffective assistance of counsel based on his failure to object to the testimony of Det. Funari is without merit.
 {¶ 53} Next, appellant argues that his trial counsel was ineffective because he failed to subpoena necessary witnesses to show "major inconsistencies" in statements concerning D.G., a suspect police later eliminated from consideration, in an effort to prove the police "rushed to judgment" in charging him with murder. Appellant claims that "perhaps the jury would have found that reasonable doubt existed as to whether [he] committed the crime, or merely witnessed it" if these witnesses were subpoenaed.
 {¶ 54} The mere failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential duty absent a showing of prejudice. State v. Coulter (1992), 75 Ohio App.3d 219, 230, citing State v. Hunt (1984), 20 Ohio App.3d 310, 312; State v.Reese (1982), 8 Ohio App.3d 202, 203.
 {¶ 55} Based on our review of the record, we fail to see how the alleged "necessary witnesses" would have assisted appellant in his case or supported his claim that the police "rushed to judgment" in charging him with Morrison's murder. Here, none of the witnesses had any firsthand knowledge regarding the murder, nor do they support appellant's theory that he witnessed the two men, who he now refuses to identify, kill Morrison. In turn, because these witnesses were merely collateral, appellant has not demonstrated that he was prejudiced by the failure to subpoena these witnesses. Accordingly, we find his claim of *Page 15 
ineffective assistance is without merit.
 {¶ 56} Appellant further argues that his trial counsel was ineffective because he failed to adequately investigate Henry, appellant's cellmate. Specifically, appellant claims that his trial counsel was ineffective because he failed to investigate "the other occupants in a cell with [appellant] and Henry to prove that Henry fabricated his story," failed to obtain Henry's records regarding his prior DUI arrest, and failed to "inquire about Henry's probation status from his prior felonies."
 {¶ 57} It is well-established that a defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. Coulter,75 Ohio App.3d at 230, citing State v. Brown (1988), 38 Ohio St.3d 305, 319. As a result, we find appellant's trial counsel's failure to investigate more fully the criminal background of Henry amounts to nothing more than defense strategy and trial tactic. Further, the benefits of such an investigation, if any, are purely speculative, and even if such an investigation would have been fruitful, it does not necessarily indicate that his trial counsel was otherwise ineffective. See Hale,2008-Ohio-3426 at ¶ 232.
 {¶ 58} Next, appellant claims that his trial counsel was ineffective because he failed to move for a mistrial after discovering the transcript of his wife's January 1, 2006 statement to police was incorrect. However, once it was agreed that the transcript of Wife's testimony was incorrect, the trial court instructed the jury "to disregard completely any reference to that phrase `fight me for a gun' and any questions and answers that were generated by it. It was simply a, the transcriptionist error and in some of the language is difficult to interpret but that interpretation was incorrect * * *." (Internal quotations added.) Further, as the trial court stated in its jury instructions, "[statements or answers that were stricken by the court or which you were instructed to disregard are not evidence and must be treated as though you never heard them." *Page 16 
 {¶ 59} We find that the trial court did not err by admitting an amended statement of Wife's testimony and by providing the jury with such a curative instruction. As noted above, we must presume that the jury followed the trial court's instructions. See Manns, 2006-Ohio-5802. As a result, we find appellant's claim of ineffective assistance of counsel based on his failure to move for a new trial is without merit.
 {¶ 60} Finally, appellant claims that his trial counsel was ineffective because he failed to object during the state's closing argument. However, as we discussed in appellant's third assignment of error, the prosecutor's closing argument was proper and did not prejudice appellant so as to deny him a fair trial. As a result, we find appellant's claim of ineffective assistance of counsel based on his failure to object to the statements made by the prosecutor during the state's closing argument is without merit.
 {¶ 61} In light of the foregoing, appellant has failed to show that his trial counsel's representation fell below the objective standard of reasonableness, or that he was prejudiced by his trial counsel's representation of him. Therefore, appellant's fourth assignment of error is overruled.
 {¶ 62} For ease of discussion, appellant's remaining assignments of error will be addressed together.
 {¶ 63} Assignment of Error No. 5:
 {¶ 64} "THE TRIAL COURT ERRED IN OVERRULING [APPELLANT'S] MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29."
 {¶ 65} Assignment of Error No. 6:
 {¶ 66} "THE JUDGMENT OF CONVICTION IS CONTRARY TO LAW AND TO THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, IN THAT THERE WAS INSUFFICIENT EVIDENCE ADDUCED TO ESTABLISH EACH AND EVERY ELEMENT OF THE OFFENSE CHARGED BEYOND A *Page 17 
REASONABLE DOUBT."
 {¶ 67} Assignment of Error No. 7:
 {¶ 68} "THE JUDGMENT OF THE TRIAL COURT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 69} In his remaining assignments of error, appellant argues that the trial court erred in denying his Crim. R. 29 motion for acquittal, that the state provided insufficient evidence to support his conviction, and that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 70} Our review of a trial court's denial of a Crim. R. 29 motion for acquittal is governed by the same standard as that used for determining whether a verdict is supported by sufficient evidence. State v.Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14.
 {¶ 71} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52. An appellate court, in reviewing the sufficiency of the evidence supporting a criminal conviction, examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Carroll, Clermont App. Nos. CA2007-02-030, CA2007-03-041, 2007-Ohio-7075, ¶ 117. After examining the evidence in a light most favorable to the prosecution, the appellate court must determine if "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. Proof beyond a reasonable doubt is "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R.C. 2901.05(D).
 {¶ 72} Unlike a sufficiency of the evidence challenge, a manifest weight challenge concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. Carroll at ¶ 118. An appellate court *Page 18 
considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses.State v. Good, Butler App. No. CA2007-03-082, 2008-Ohio-4502, ¶ 25, citing State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. Under a manifest weight challenge, the question is whether, in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.Good at ¶ 25.
 {¶ 73} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." State v.Wilson, Warren App. No. CA2006-01-007, 2007-Ohio-2298, ¶ 35. As a result, a determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. Id.
 {¶ 74} Appellant argues his conviction should be reversed because the state presented "no evidence" that he was the perpetrator of the crime. Specifically, appellant claims that the jury's verdict "depended entirely upon whom it chose to believe" and was "based entirely on the credibility of Phillip Henry, a jailhouse snitch, an alcoholic, [and] convicted felon," and therefore, the evidence does not support his conviction. This argument lacks merit.
 {¶ 75} At trial, Henry testified that he was an acquaintance of appellant who had played pool with him at a bar previously. Further, Henry testified that, while serving time for DUI and a probation violation, he was placed in a four-man cell with appellant, who, at the time, was awaiting trial. After being placed in a cell with appellant, Henry testified that the two began to talk and that appellant asked him to be a witness for his defense and "to say that [he] was [working] on the bar that night." Henry also testified that appellant told him that he almost confessed to Morrison's murder but "it took every bit of his life not to just fold and *Page 19 
fumble right there" when looking at pictures of her body, and that calling the police to report he was a witness to Morrison's murder was the "biggest mistake he ever made in his life."
 {¶ 76} Henry also testified that appellant confessed to the Morrison's murder. Specifically, Henry testified that appellant told him that his wife and Morrison had gotten into an altercation, which prompted his wife to hit Morrison with a PVC pipe. Thereafter, Henry testified that appellant told him he "panicked, didn't know what to do" and that he "finished everything." Furthermore, Henry testified that appellant told him he "cleaned up" by wiping down the pipe with his wife's bandana and by pouring paint thinner on his shoes to conceal any evidence. Finally, Henry testified that "the only key thing that was told to [him] is that [appellant] had to try to clean up the mess and finish [Morrison] off [but] it took him three attempts to do it."
 {¶ 77} Further, contrary to appellant's claim, the state provided evidence, albeit circumstantial, to support the jury's guilt finding. See, e.g., State v. Carmen, Clinton App. No. CA2007-05-028,2008-Ohio-5841, ¶ 15 (the state can use either direct or circumstantial evidence to prove the elements of a crime). Here, the evidence presented indicated that appellant was seen talking with Morrison on the night of her murder, that he was present at the scene during her murder, which occurred at a vacant house where appellant had previously resided, and that he hailed a cab near the scene of the crime at approximately 3:45 a.m., mere minutes after Morrison's presumed time of death.
 {¶ 78} In his defense, appellant testified that his original statement to police implicating J.M. in Morrison's murder was false, but that he actually saw her attacked and beaten by two men who had been smoking crack cocaine in an alley behind his former residence. After he saw Morrison attacked, he became scared and ran into the vacant house and hid in a small furnace room where he stayed while the two men dragged Morrison inside the house and hit her with a PVC pipe, killing her. Further, although appellant claimed to have known one of *Page 20 
the men who attacked Morrison, he refused to identify the attacker because he felt threatened and believed that his family was in danger.
 {¶ 79} While there may be a question as to Henry's credibility, "the weight to be given the evidence and the credibility of witnesses are primarily for the trier of facts." State v. Pringle, Butler App. Nos. CA2007-08-193, CA2007-09-238, 2008-Ohio-5421, ¶ 28. As a result, we defer to the jury's decision finding Henry's testimony credible, even after being subject to a lengthy cross-examination, because the jury was "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id.
 {¶ 80} After reviewing the record, we cannot say that the jury clearly lost its way in finding Henry's testimony to be competent, credible and reliable, or that the circumstantial evidence presented by the state did not support his conviction. As a result, because we cannot say appellant's conviction created such a manifest miscarriage of justice that his conviction must be reversed, we find no reason to disturb the jury's finding of guilt. Therefore, appellant's fifth, sixth, and seventh assignments of error are overruled.
 {¶ 81} Judgment affirmed.
YOUNG and POWELL, JJ., concur.
[1] Det. Funari testified that appellant stayed at the police station after his interview was complete because appellant's wife was also being interviewed and because photographs were being gathered in an effort to conduct a photo-array. *Page 1