[Cite as *State v. Pearce*, 2013-Ohio-3484.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2013-01-001 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>8/12/2013 |
| - vs - | : | |
| | : | |
| JAMES SHANNON PEARCE, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012-CR-00798


D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Christine Tailer, P.O. Box 14, Georgetown, Ohio 45121, for defendant-appellant


**S. POWELL, P.J.**

{¶ 1}   Defendant-appellant, James Shannon Pearce, appeals from his conviction and sentence in the Clermont County Court of Common Pleas following his guilty plea to possession of criminal tools, forgery, and telecommunications fraud.   For the reasons outlined below, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2}   On October 15, 2012, Pearce, along with his co-defendants, Amanuel Tesfazgi and Robert and Joshua Cooley, were arrested at a local Red Roof Inn after they attempted to

use a fraudulent gift card at a Speedway gas station located in Union Township, Clermont County, Ohio. The men were discovered with computers and other devices that they used to manufacture gift cards with illegally obtained credit card information from unsuspecting victims overseas. At the time of his arrest, Pearce was on postrelease control resulting from his prior fourth-degree felony theft conviction in the Scioto County Court of Common Pleas in Case No. 10CR000799. Pearce had been released from prison at the completion of his 18-month sentence on February 7, 2012.

{¶ 3} On October 24, 2012, Pearce was indicted on one count each of possession of criminal tools, forgery, telecommunications fraud, and engaging in a pattern of corrupt activity. On November 15, 2012, after entering into a plea agreement, Pearce pled guilty to the possession of criminal tools, forgery, and telecommunications fraud charges, with the charge of engaging in a pattern of corrupt activity being dismissed. Following Pearce's guilty plea, the trial court ordered a presentence investigation and scheduled a sentencing hearing for December 4, 2012. However, prior to sentencing, Pearce filed a memorandum requesting the trial court to merge the possession of criminal tools and forgery charges for purposes of sentencing. Pearce did not request the trial court to merge the telecommunications charge. The trial court rescheduled the sentencing hearing for December 20, 2012, 317 days after Pearce was released from prison and placed on postrelease control.

{¶ 4} On December 20, 2012, the trial court granted Pearce's motion to merge the possession of criminal tools and forgery charges for purposes of sentencing. The state then elected to proceed on sentencing for the possession of criminal tools charge, and the trial court sentenced Pearce to serve an aggregate of 18 months in prison consisting of two consecutive 9-month prison terms. In addition, relying on the presentence investigation report ("PSI"), which indicated Pearce was subject to a four-year term of postrelease control, the trial court ordered Pearce to serve an additional three years and 48 days for violating his

postrelease control obligations, the total amount of time the trial court determined was remaining on his supposed four-year postrelease control term.

{¶ 5} Pearce now appeals from his conviction and sentence, raising three assignments of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT GUILTY OF COUNT THREE, TELECOMMUNICATIONS FRAUD, WHEN THERE WERE INSUFFICIENT FACTS SET FORTH AT THE PLEA HEARING TO CONSTITUTE THE OFFENSE.

{¶ 8} In his first assignment of error, Pearce argues the trial court erred in accepting his guilty plea to telecommunications fraud. In support of this claim, Pearce argues that accepting his guilty plea was in error as the state "did not submit **any** factual basis on which to support a finding of guilty." (Emphasis sic.) However, not only do we find the state submitted sufficient facts to support a conviction, it is well-established that a guilty plea "is a complete admission of the defendant's guilt."[1] Crim.R. 11(B)(1); *State v. Bach*, 12th Dist. Warren No. CA2005-05-057, 2006-Ohio-501, ¶ 5. In turn, by entering a guilty plea, Pearce not only stated that he did the acts described in the indictment, but he also admitted guilt of the substantive crime. *State v. Fuller*, 12th Dist. Butler No. CA2008-09-240, 2009-Ohio-5068, ¶ 105.

{¶ 9} As this court has consistently stated, upon entering a guilty plea, the defendant effectively "waive[s] the right to require the state to prove his guilt beyond a reasonable doubt." *State v. Taylor*, 12th Dist. Warren No. CA2011-08-054, 2011-Ohio-6797, ¶ 7.

---

1. At his plea hearing, the state specifically stated that Pearce acted as an aider and abettor to Amanuel Tesfazgi as he illegally obtained credit card information from unsuspecting victims overseas in order to further perpetuate the fraud. This is more than sufficient to support Pearce's conviction of telecommunications fraud. Moreover, pursuant to R.C. 2923.03(F), if an individual is found guilty of complicity as an aider or abettor, the individual "shall be prosecuted and punished as if he were a principal offender."

{¶ 10} "Consequently, there is no evidence to consider, and the trial court was not required to determine whether a factual basis existed to support the guilty plea, prior to entering judgment on that plea." *State v. Isbell*, 12th Dist. Butler No. CA2003-06-152, 2004-Ohio-2300, ¶ 16; *State v. Wood*, 48 Ohio App.2d 339, 344 (8th Dist.1976). Therefore, as his guilty plea serves as a complete admission of his guilt, Pearce's first assignment of error is without merit and overruled.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE COUNT THREE, TELECOMMUNICATIONS FRAUD, WITH COUNT ONE, POSESSION [sic] OF CRIMINAL TOOLS, WHEN ALL BOTH [sic] OFFENSES WERE COMMITTED BY THE SAME CONDUCT.

{¶ 13} In his second assignment of error, Pearce argues the trial court erred by failing to merge the possession of criminal tools and telecommunications fraud charges at sentencing because they constitute allied offenses of similar import. We disagree.

{¶ 14} At the outset, we note that Pearce concedes he never raised the issue of merger as it relates to the possession of criminal tools and communications fraud before the trial court. Rather, Pearce readily acknowledges that he merely requested the trial court to merge his possession of criminal tools and forgery counts. As a result, because Pearce failed to raise this issue below, this court will review Pearce's allied offense argument for plain error. *See State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 35. Under Crim.R. 52(B), plain error exists only where there is an obvious deviation from a legal rule that affected the outcome of the proceeding. *State v. Blanda*, 12th Dist. Butler No. CA2010-03-050, 2011-Ohio-411, ¶ 20, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). The imposition of multiple sentences for allied offenses of similar import amounts to plain error. *State v. Clay*, 196 Ohio App.3d 305, 2011-Ohio-5086, ¶ 25 (12th Dist.); *State v.*

*Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31-33.

{¶ 15} Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). As R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 16} The Ohio Supreme Court established a two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Under *Johnson*, the first inquiry focuses on whether it is possible to commit both offenses with the same conduct. *State v. Richardson*, 12th Dist. Clermont No. CA2012-06-043, 2013-Ohio-1953, ¶ 21, citing *Johnson* at ¶ 48. In making this determination, it is not necessary that the commission of one offense would always result in the commission of the other, but instead, the question is simply whether it is possible for both offenses to be committed with the same conduct. *State v. Craycraft*, 193 Ohio App.3d 594, 2011-Ohio-413, ¶ 11 (12th Dist.); *State v. Marlow*, 12th Dist. Clermont No. CA2012-07-051, 2013-Ohio-778, ¶ 10.

{¶ 17} If it is possible to commit both offenses with the same conduct, courts must next determine whether the offenses were in fact committed by the same conduct, that is, by a single act, performed with a single state of mind. *State v. Lung*, 12th Dist. Brown No. CA2012-03-004, 2012-Ohio-5352, ¶ 11, citing *Johnson* at ¶ 49. If so, the offenses are allied offenses of similar import and must be merged. *State v. Luong*, 12th Dist. Brown No.

CA2011-06-110, 2012-Ohio-4520, ¶ 39. However, if the commission of one offense will never result in the commission of the other, "or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 66, quoting *Johnson* at ¶ 51.

{¶ 18} Applying *Johnson* to the facts of this case, we must first determine whether it is possible to commit the offenses of possession of criminal tools and communications fraud with the same conduct. Possession of criminal tools as proscribed by R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." On the other hand, telecommunications fraud in violation of R.C. 2913.05(A) provides that "[n]o person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud." However, because the accused would need to possess some device or instrument to commit telecommunications fraud – for example, a computer – it is certainly possible to commit both possession of criminal tools and telecommunications fraud with the same conduct.

{¶ 19} Having found it possible to commit both possession of criminal tools and telecommunications fraud with the same conduct, we must now determine whether the offenses were in fact committed by the same conduct, meaning with a single act and with a single state of mind. Here, Pearce's telecommunications fraud charge was based on his aiding and abetting a co-defendant, Amanuel Tesfazgi, in illegally obtaining credit card information from unsuspecting victims overseas. Once that information was illegally

obtained, Pearce then aided and abetted the other co-defendants, Robert and Joshua Cooley, in their attempt to use a fraudulent gift card that contained the illegally obtained credit card information at a local Speedway gas station.

{¶ 20} As the record indicates, Pearce's involvement in this scheme constitutes two separate acts and separate conduct. Pearce's telecommunications fraud conviction is based on his aiding and abetting Amanuel Tesfazgi in illegally obtaining credit card information from unsuspecting victims overseas, whereas his conviction for possession of criminal tools is based on his aiding and abetting the Joshua and Robert Cooley in their attempts to use the fraudulent gift cards. Therefore, based on the facts of this case, we find the trial court did not err, let alone commit plain error, in failing to merge the possession of criminal tools and telecommunications fraud charges for purposes of sentencing. Accordingly, Pearce's second assignment of error is overruled.

{¶ 21} Assignment of Error No. 3:

{¶ 22} THE TRIAL COURT ABUSED ITS DISCRETION IN NOT PLACING DEFENDANT ON COMMUNITY CONTROL WHEN APPELLANT HAD NEVER COMPLETED A DRUG AND ALCOHOL PROGRAM AND AN UNDERLYING DRUG PROBLEM WAS THE BASIS OF HIS CRIMINAL BEHAVIOR.

{¶ 23} In his third assignment of error, Pearce argues the trial court abused its discretion in sentencing him to serve an aggregate 18-month prison term as opposed to merely community control and drug rehabilitation. This claim lacks merit.

{¶ 24} As we recently noted in *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, "the standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences." *Id.* at ¶ 6, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7; *see also State v. Cochran*, 10th Dist. Franklin No. 11AP-408, 2012-Ohio-5899, ¶ 52. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony

sentencing decision, such as the case here, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." However, as explicitly stated in R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."

{¶ 25} Rather, the appellate court may take any action authorized under R.C. 2953.08(G)(2) only if the court "clearly and convincingly finds" that either: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;" or (2) "[t]hat the sentence is otherwise contrary to law." A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly applies postrelease control, and sentences appellant within the permissible statutory range. *Crawford* at ¶ 9; *State v. Elliott*, 12th Dist. Clermont No. CA2009-03-020, 2009-Ohio-5926, ¶ 10.

{¶ 26} In making such a determination, it is "important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative." *Crawford* at ¶ 8, quoting *Venes*, 2013-Ohio-1891 at ¶ 21. "It does not say that the trial judge must have clear and convincing evidence to support its findings." *Id.* Quite the contrary, "it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings." *Id.* Simply stated, the language in R.C. 2953.08(G)(2) establishes an "extremely deferential standard of review" for "the restriction is on the appellate court, not the trial judge." *Id.*

{¶ 27} Pearce does not argue that his sentence was clearly and convincingly contrary to law, nor does he argue any errors in the trial court's decision to impose consecutive

sentences under R.C. 2929.14(C). Instead, Pearce argues that the trial court's decision amounts to an abuse of discretion in that "community control and drug rehabilitation would have been more appropriate." However, as noted above, the Generally Assembly has explicitly stated through the passage of R.C. 2953.08(G)(2) that this court's standard for review "is not whether the sentencing court abused its discretion." Therefore, we are not entitled to review the trial court's decision under the more lenient abuse of discretion standard. *See Crawford*, 2013-Ohio-3315 at ¶ 17; *see also A.H.*, 2013-Ohio 2525 at ¶ 15. Nevertheless, in the interest of justice and fairness, we will review the trial court's decision in accordance with the applicable standard as provided by R.C. 2953.08(G)(2).

**{¶ 28}** In reviewing Pearce's sentence, we initially note that the trial court properly complied with the newly enacted sentencing laws of 2011 Am.Sub.H.B. No. 86. House Bill 86 established a preference for, and in certain conditions, a presumption of, community control sanctions for fifth-degree felonies. *See* R.C. 2929.13(B)(1)(a); *State v. Snyder*, 3rd Dist. Seneca No. 13-11-37, 2012-Ohio-3069. However, this presumption does not apply here as Pearce had previously been convicted of a felony offense and had served a prison term. *See State v. Glowka*, 12th Dist. Butler No. CA2012-10-203, 2013-Ohio-3080, ¶ 18; *see also* R.C. 2929.13(B)(1)(a)(i) and R.C. 2929.13(B)(1)(b)(x). The trial court, therefore, properly determined that imposing a prison sentence was permissible.

**{¶ 29}** Furthermore, after a thorough review of the record, we find no error in the trial court's sentencing decision as it was not clearly and convincingly contrary to law, nor does it run afoul of the statutory requirements for consecutive sentences as found under R.C. 2929.14(C). As the trial court correctly noted, Pearce was involved in an organized criminal activity in that "they had a card reader, they obtained a large amount of credit card information, they had gift cards made up," and that it was "obvious" that they intended to "do it on a much large basis than passing gift cards at Speedway."

{¶ 30} The trial court also noted Pearce's significant criminal history, including numerous adjudications as a juvenile, which ranged a span of nearly two decades. This included a previous unsuccessful stint on community control after he absconded following his 2003 burglary conviction, during which time Pearce was convicted of several additional offenses in Orange County, Florida. Moreover, it is undisputed that Pearce was on postrelease control when he committed the crimes at issue here. In turn, as the trial court found, "recidivism is virtually certain" in this matter. Therefore, because the trial court's sentencing decision was supported by the record and otherwise not contrary to law, Crawford's third assignment of error is overruled.

{¶ 31} Assignment of Error No. 4:

{¶ 32} THE TRIAL COURT ERRED IN VIOLATING APPELLANT'S SCIOTO COUNTY POST RELEASE [sic] CONTROL AND SENTENCING APPELLANT WHEN THERE WAS NO EVIDENCE IN THE RECORD BEFORE THE COURT AS TO WHETHER OR NOT APPELLANT HAD BEEN PROPERLY ADVISED OF THE SANCTIONS IMPOSED FOR A VIOLATION OF POST RELEASE [sic] CONTROL IN THAT PRIOR CASE OR AS TO THE EXACT NATURE OF THE SENTENCE IN THAT CASE.

{¶ 33} In his fourth assignment of error, Pearce argues the trial court erred by ordering him to serve an additional three years and 48 days as a result of his postrelease control violation. In support of this claim, Pearce initially argues that imposing this additional prison term was improper as there is nothing in the record to indicate whether he was properly advised of his postrelease control obligations following his conviction in the Scioto County Court of Common Pleas in Case No. 10CR000799. Pearce, however, did not provide any evidence that postrelease control was improperly imposed. In fact, when questioned by the trial court at his November 15, 2012 plea hearing, Pearce himself admitted that he was on postrelease control after serving 18-months in prison upon being released in February of

- 10 -

2012. As Pearce stated:

> THE DEFENDANT: I just got out in February.
>
> * * *
>
> THE COURT: Okay. And what sentence were you serving?
>
> THE DEFENDANT: 18 months.
>
> THE COURT: And what was that for?
>
> THE DEFENDANT: Forgery.
>
> * * *
>
> THE COURT: Okay. So you were released after 18 months and pleased on post-release control, and you're still on post-release control?
>
> THE DEFENDANT: Yes, Your Honor.

{¶ 34} Nothing in the record calls into question the fact that Pearce was properly placed on postrelease control following his release from prison. Moreover, even if there was an issue with the imposition of postrelease control, any such concerns should have been raised on appeal from the Scioto County Court of Common Pleas decision, not from the trial court's sentencing decision here. Therefore, we find Pearce's initial argument to be without merit.

{¶ 35} That said, Pearce also argues there is nothing in the record to confirm the "appropriateness" of the additional three-year and 48-day prison sentence imposed as a result of his postrelease control violation. As noted above, the PSI prepared in this matter indicates Pearce was released from prison on February 7, 2012 subject to a four-year postrelease control term. Although not particularly clear, it appears as though the trial court relied upon the language in the PSI to find Pearce had three years and 48 days remaining on his four-year postrelease control term, as 317 days had passed since his release from prison and the December 20, 2012 sentencing hearing.

{¶ 36} We are unable to determine whether the judgment entry of sentence in Case No. 10CR000799 was before the trial court in this matter. The state, however, has attached the judgment entry, for which we take judicial notice, to its appellate brief. A review of the judgment entry of sentence indicates Pearce was not subject to a four-year postrelease control term as alleged in the PSI, but rather, an optional term of postrelease control up to a maximum of three years resulting from his fourth-degree felony theft conviction.[2] As that judgment entry explicitly states:

> The Court has further notified the defendant that post release control is optional in this case for a maximum of three (3) years, as well as the consequences for violating conditions of post release control imposed by the Parole Board under Revised Code Section 2967.28. The Defendant is Ordered to serve as part of this sentence any term of post release control imposed by the Parole Board, and any prison term for violation of that post release control.

{¶ 37} It is certainly conceivable that the PSI contains a clerical error in proclaiming Pearce was subject to a four-year term of postrelease control. However, given the contradictory language regarding his postrelease control obligations found in the PSI and the judgment entry of sentence in Case No. 10CR000799, we are simply unable to conclusively determine the length of Pearce's postrelease control obligations following his release from prison. In turn, without such information available, we cannot determine if the trial court erred in imposing an additional three-year and 48-day prison sentence resulting from Pearce's postrelease control violation. Therefore, we reverse the three-year and 48-day sentence and remand this matter to the trial court to determine the length of Pearce's postrelease control obligations following his release from prison and, if necessary, to

---

2. Pursuant to R.C. 2967.28(C), "[a]ny sentence to a prison term for a felony of the third, fourth, or fifth degree * * * shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender."

resentence Pearce in accordance with R.C. 2929.141 in regards to his postrelease control violation only. Accordingly, Pearce's fourth assignment of error is overruled in part, sustained in part, and this matter is remanded for further proceedings.

{¶ 38} Judgment affirmed in part, reversed in part, and remanded.

PIPER and M. POWELL, JJ., concur.