[Cite as *State v. Sturgill*, 2013-Ohio-4648.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NOS. CA2013-01-002 |
| | | CA2013-01-003 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 10/21/2013 |
| ISOME EARL STURGILL, JR., | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012-CR-00839


D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Arenstein and Gallagher, Hal R. Arenstein, The Citadel, 114 East Eighth Street, Cincinnati, Ohio 45202, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Isome E. Sturgill, Jr., appeals from an amended judgment entry sentencing him to 13 years in prison after a jury found him guilty of various offenses relating to the operation of a motor vehicle.  For the reasons discussed below, we affirm appellant's convictions and sentence.

**I. FACTS**

{¶ 2} On November 7, 2012, appellant was indicted on one count of failing to comply with the order or signal of a police officer in violation of R.C. 2921.331(B) (count one), one count of driving under an OVI suspension in violation of R.C. 4510.14(A) (count two), one count of driving under a Financial Responsibility Act (FRA) suspension in violation of R.C. 4510.16(A) (count three), and one count of operating a vehicle while under the influence of alcohol with a prior felony OVI conviction in violation of R.C. 4511.19(A)(1)(a) (count four). Count four was accompanied with a specification that appellant had previously been convicted of five or more OVI offenses within the past 20 years. The charges arose out of allegations that on the evening of June 21, 2011, appellant, who was operating a motor vehicle in Goshen Township, Clermont County, Ohio, while under the influence of alcohol and while under OVI and FRA suspensions, attempted to elude or flee from a police officer after receiving a visible or audible signal to stop the vehicle, thereby causing a substantial risk of serious physical harm to persons or property.

{¶ 3} A jury trial was held in November 2012. At trial, the state presented testimony from Sergeant Ronald Robinson, an officer with the Goshen Township Police Department. Robinson testified that he was in uniform and in a marked police cruiser on the evening of June 21, 2011 when he clocked a Chevrolet Cavalier being driven by appellant on State Route 28, traveling 80 m.p.h. in a 45 m.p.h. speed zone. Robinson stated that although he had activated his vehicle's overhead lights and siren, appellant continued driving above the posted speed limit. A five-mile high-speed chase ensued, and during this time, Robinson observed that appellant was driving on the wrong side of the road, crossing yellow lines, passing cars, running stop signs, and driving through yards in residential areas. Robinson testified that, at one point, appellant made a "big U-turn" in front of his vehicle, giving Robinson a clear visual of appellant behind the wheel of the Cavalier. Appellant drove through a subdivision at a high rate of speed before he eventually pulled into a private

driveway, he and his female passenger got out of the car, and both individuals attempted to flee on foot. Robinson stated that the female passenger, appellant's girlfriend Jennifer Neal, was apprehended shortly after she exited the car, but Robinson was unable to apprehend appellant that evening. Robinson testified that his police cruiser's dash-cam recorded the high-speed chase and appellant and Neal's subsequent act of fleeing the vehicle. A copy of the recording was entered into evidence.

{¶ 4} Robinson explained that after apprehending Neal, he was able to discover appellant's name and obtain information on how appellant and Neal had spent their evening. Robinson discovered that appellant and Neal had started their evening at Hangovers, a bar located in Goshen Township, before leaving the bar to pick up appellant's brother, Edwin Sturgill. The three went to Zappz Bar and Grill in Loveland, Ohio. After getting into a "scuffle" at Zappz, appellant, Neal, and Edwin left Zappz. Appellant and Neal dropped Edwin off at his home, and the couple returned to Hangovers. It was after appellant and Neal left Hangovers the second time that the high-speed chase occurred.

{¶ 5} Robinson testified that, as part of his investigation, he ran appellant's BMV record and discovered that appellant was driving "under suspension." Robinson also discovered that appellant had prior OVI convictions, including (1) a November 30, 1994 OVI conviction in Clermont County Municipal Court Case No. 94TRC2291446, (2) an April 11, 1996 OVI conviction in Clermont County Municipal Court Case No. 96TRC254942, (3) a December 28, 1998 felony OVI conviction in the Hamilton County Court of Common Pleas Case No. B9805847, (4) a February 7, 2003 OVI conviction in the Clermont County Municipal Court Case No. 02TRC23658A, and (5) a May 3, 2007 OVI conviction in the Clermont County Court of Common Pleas Case No. 2007CR00039. A certified copy of appellant's BMV record as well as certified copies of the judgment entries of conviction in the above mentioned OVI cases were stipulated to by the parties as authentic and admissible and were

entered into evidence.

{¶ 6}   Robinson testified that he exchanged phone calls with appellant the day after the high-speed chase.  During one of these phone calls, appellant admitted that he had been drinking on the evening of June 21, 2011, but he denied being the driver of the vehicle involved in the high-speed chase.   Appellant claimed that Neal had been the driver. Appellant later provided a written statement to the Goshen Township Police Department.  In his statement, appellant admitted that he and Neal had gone to Hangovers, where he "had a drink and ordered a pizza."  Appellant claimed that the bartender at Hangovers "was drinking and had done several shots of tequila and * * * was smoking a bowl of marijauna [sic]." Appellant stated that he and Neal left Hangovers to pick up his brother and then the three of them went to Zappz "where [they] ordered one drink and didn't drink it because [he] got into a confrontation with a guy.  [They] just left instead of having trouble."  After dropping off appellant's brother, appellant stated that he and Neal "stopped back at Hangovers had one drink [and] ate the rest of the pizza."  Appellant claimed that Neal was driving when they left Hangovers when "a cop for no aparent [sic] reason turned his lights on her.  She panicked went toward her fathers [sic] house and then turned on a street come [sic] out on Gibson and down 48 where she missed a turn tried to turn around and then pulled in a driveway.  I got out and ran she tried to follow me and was caught."

{¶ 7}   On cross-examination, Robinson admitted that other than observing appellant's driving during the high-speed chase, he did not have the opportunity to personally observe or interact with appellant on the evening of June 21, 2011.  As a result, Robinson was unable to utilize any of the sobriety tests typically used when an officer suspects an individual has been drinking and driving, such as the eye nystagmus test, the walk and turn test, the one-leg stand test, a breath test, a urine test, or a blood test.  However, Robinson testified that the manner in which appellant was driving indicated appellant was impaired.  In determining

- 4 -

whether an individual may be driving impaired, Robinson explained that he looks at, "[s]peed, marked lanes, driving erratic, slow speed, breaking a lot - - hitting their brakes. Just - - there's different things. Mostly moving within their lanes a lot. A lot of that. I usually see a lot of impaired drivers moving within lanes * * *." Given that appellant admitted to drinking alcohol and Robinson observed appellant "speeding, * * * clearly driving into oncoming traffic - - in the other lane, * * * moving within lanes, * * * [going] left of center, * * * running stop signs, * * * [and] passing cars on curves," Robinson believed that appellant was operating a motor vehicle while under the influence of alcohol on June 21, 2011.

{¶ 8} Samantha Fite, a bartender at Hangovers, and Shannon McAleenan, a bartender at Zappz, testified at trial that they served alcohol to appellant on the evening of June 21, 2011. Fite testified that appellant and Neal arrived at Hangovers around 6:00 p.m., and they stayed for one and one-half to two hours. During this time, appellant was personally served four or five alcoholic drinks. When appellant and Neal returned to Hangovers sometime later, around 10:00 p.m., Fite served appellant another drink. Appellant and Neal played a game of pool and then left for the evening. Fite stated that at the time appellant and Neal left, neither were stumbling around. However, Fite opined that neither appellant or Neal should have been driving given that they each had consumed numerous drinks. Fite further testified that she had not been drinking or smoking marijuana on the night she served appellant alcohol.

{¶ 9} McAleenan testified that appellant, Edwin, and Neal arrived at Zappz, and appellant and Edwin were each served an alcoholic drink. When she served appellant, McAleenan did not observe him slurring his words or stumbling around. About ten minutes later, McAleenan observed appellant getting into an argument with another man, a bar regular. After chairs and punches were thrown, McAleenan "kicked" appellant, Edwin, and Neal out of the bar.

{¶ 10} Following McAleenan's testimony, the state rested. Appellant presented one witness on behalf of his defense. Appellant's brother, Edwin, testified that appellant drove to his house and picked him up between 7:00 p.m. and 8:00 p.m. on June 21, 2011. Edwin testified that appellant did not appear to be intoxicated, did not have red eyes, and was not slurring his speech. Edwin rode with appellant to Zappz, and during this time, he did not notice anything which caused him to believe appellant was driving impaired.

{¶ 11} Edwin stated that he, appellant, and Neal each ordered an alcoholic drink after arriving at Zappz, but they did not get to finish their drinks because appellant got into a confrontation with someone at the bar and they had to leave. Appellant drove Edwin back to his house and dropped him off. Edwin testified that when he said goodnight to appellant, he did not have any concerns that appellant was intoxicated. In fact, Edwin stated, "I've known him long enough to know not to get in a car with him when he's drinking. I mean it's like night and day. You know, it's not something that is hard to tell when he's drinking. * * * He was not intoxicated."

{¶ 12} Following closing arguments, the matter was submitted to the jury. The jury returned guilty verdicts on all counts and further found that appellant had been convicted of five or more OVIs in the past 20 years as set forth in the specification accompanying count four. Appellant was sentenced to 36 months in prison on count one, 60 months in prison on count four, and 60 months in prison on the specification accompanying count four, to run consecutive to one another for a total of 13 years. The court ordered 180-day jail sentences on counts two and three to be served concurrently to the 13-year prison term. Appellant timely appealed, setting forth four assignments of error. For ease of discussion, we will address appellant's third and fourth assignments of error together.

## II. ANALYSIS

{¶ 13} Assignment of Error No. 1:

{¶ 14} TRIAL COUNSEL'S FAILURE TO REQUEST A STIPULATION FROM THE PROSECUTOR TO THE SPECIFICATION CHARGING APPELLANT WITH HAVING BEEN CONVICTED OF FIVE PRIOR OVI'S AMOUNTED TO INEFFECTIVE ASSISTANCE.

{¶ 15} In his first assignment of error, appellant contends his trial counsel was ineffective for failing "to comprehend he could request a stipulation to the specification charging [a]ppellant with having been previously convicted of five OVIs in the past [20] year[s] to shield [a]ppellant from the introduction of evidence whose probative value was substantially outweighed by the unfair prejudice it produced." Appellant argues his trial counsel should have filed a motion in limine or an offer to stipulate to the specification so that the jury would not have heard evidence that appellant had five similar OVI convictions within the last 20 years. Appellant further argues that the specification accompanying count four of the indictment "is nothing more than a sentence enhancement and not an actual element of the underlying offense of OVI." We disagree with appellant's arguments.

{¶ 16} To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that his trial counsel's performance was deficient and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 14. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

- 7 -

**{¶ 17}** Appellant was charged in count four of the indictment with operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), which provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol." If a person has previously been convicted of five or more equivalent offenses within 20 years of the offense, and one of those offenses was a felony OVI, that person is guilty of third-degree felony OVI. R.C. 4511.19(G)(1)(e)(i). The offense is a misdemeanor if the State does not set forth evidence of any prior convictions. R.C. 4511.19(G)(1)(a). Because a prior OVI conviction raises the degree of a subsequent OVI charge, the prior conviction is an essential element of the subsequent charge, and therefore, must be proven beyond a reasonable doubt. *State v. Jones*, 12th Dist. Warren No. CA2011-05-044, 2012-Ohio-1480, ¶ 12, citing *State v. Russell*, 12th Dist. Butler No. CA98-02-018, 1998 WL 778312, *2 (Nov. 9, 1998); *State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 37. Furthermore, where a prior conviction is an essential element of an offense, the state is not required to accept a defendant's stipulation to a prior conviction. *Jones* at ¶ 12.

**{¶ 18}** Appellant relies on *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644 (1997), for his argument that the probative value of the evidence detailing his five prior OVI convictions was substantially outweighed by the danger of unfair prejudice. In *Old Chief*, the Supreme Court determined that a district court had abused its discretion under Federal Evid.R. 403 when it spurned a defendant's offer to concede a prior judgment for assault causing bodily injury and admitted the full judgment record over the defendant's objection. The Supreme Court held that providing the jury with the name and nature of the prior offense raised the risk of a verdict tainted by improper considerations in the defendant's subsequent case, where he faced charges of violating a federal statute prohibiting the possession of a firearm by anyone with a prior felony conviction. *Id.* at 180-186.

**{¶ 19}** This court has previously considered the holding of *Old Chief* and found it to be non-binding and inapplicable, as it construes the Federal Rules of Evidence rather than Ohio's Rules of Evidence. *See Jones* at ¶ 15; *Russell* at *3. We see no reason to deviate from our holdings in *Jones* and *Russell.* The evidence concerning the name and nature of appellant's prior OVI convictions had substantial probative value, as the state was required to prove beyond a reasonable doubt that appellant had previously been convicted of five OVI offenses within the past 20 years, one of which was a felony OVI, before appellant could be convicted under R.C. 4511.19 of a third-degree felony OVI. Admittedly, the admission of evidence regarding appellant's prior OVI convictions created a potential risk that the jury would find him guilty of the charge of felony OVI in the underlying case on the basis of his past convictions, but this potential risk of unfair prejudice arises from the wording of the statute itself. *See Jones* at ¶ 17. Moreover, the trial court took appropriate steps to instruct the jury as to the proper purpose of considering the prior OVI convictions, stating:

> With reference to the convictions * * * that evidence is being presented for a limited purpose. You may not consider the prior convictions for OVI for the purpose of determining the Defendant's character in order to determine whether he acted in conformity with the character - - that character on this particular occasion. Putting it another way, you may not consider that evidence for any purpose in determining whether or not the Defendant in this case committed an OVI offense. In other words, you can't use the fact that there were prior convictions to prove or for the purpose of proving whether he was driving under the influence of alcohol and or any drug of abuse on this particular occasion. What you may consider it for is if you make a finding - - if and only if you make a finding that he was driving under the influence, then you will go ahead and make additional findings. One of the additional findings will be whether or not he was previously convicted of a felony OVI offense, and the other finding will be whether or not he was previously convicted of five or more OVI offenses within a period of 20 years prior to this.

We must presume that the jury followed the instructions given to it by the trial court. *State v. Martin*, 12th Dist. Warren Nos. CA2002-10-111, CA2002-10-115, and CA2002-10-116, 2003-

Ohio-6551, ¶ 24.

{¶ 20} In light of the foregoing considerations, we find no merit to appellant's first assignment of error. As appellant's prior convictions for OVI actually transformed the crime by increasing its degree, the prior convictions were an essential element of the crime that the state was required to prove beyond a reasonable doubt. As such, the state would have been under no obligation to accept an offer to stipulate to such convictions, had one been made by appellant's trial counsel. Accordingly, we cannot say that trial counsel was ineffective for not offering to stipulate to appellant's prior OVI convictions.

{¶ 21} Appellant's first assignment of error is, therefore, overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY ON THE JURY'S VERDICT BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 24} In his second assignment of error, appellant contends his conviction for OVI was not supported by the manifest weight of the evidence. Specifically appellant argues that the state did not present evidence establishing that he operated a motor vehicle while impaired, contending that the fact that he was served alcoholic beverages and he fled police are "insufficient to prove impairment beyond a reasonable doubt." Appellant does not argue that the state failed to prove the specification accompanying his OVI charge, and, as such, we shall limit our discussion to a determination of whether appellant's OVI conviction was against the manifest weight of the evidence.

{¶ 25} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the

- 10 -

reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Furthermore, "[a] unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment on the weight of the evidence in a jury trial." *Id.*, citing *Thompkins* at 389.

{¶ 26} Appellant was convicted of OVI in violation of R.C. 4511.19(A)(1)(a), which required that the state prove beyond a reasonable doubt that appellant operated a vehicle within Ohio while under the influence of alcohol. Being "under the influence of alcohol" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such a quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *City of Mason v. Molinari*, 12th Dist. Warren No. CA2006-05-056, 2007-Ohio-5395, ¶ 75, citing *Toledo v. Starks*, 25 Ohio App.2d 162, 166 (6th Dist.1971). *See also, State v. Steele*, 95 Ohio App. 107, 111 (3d Dist.1952) ("[B]eing 'under the influence' of alcohol or intoxicating liquor means that the

accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess").

{¶ 27} "Circumstantial evidence will sustain a conviction for driving under the influence." *State v. Wise*, 5th Dist. Guernsey No. 2008-CA-9, 2008-Ohio-7003, ¶ 78, citing *State v. Neff*, 104 Ohio App. 289 (3d Dist.1957). Moreover, "[p]roof of factual circumstance[s] concerning [a] defendant's conduct and activities preceding and following the driving of the vehicle [one] is charged to have driven while under the influence of [alcohol] is relevant to the ultimate issue of whether [a] defendant was driving a vehicle while under the influence of [alcohol]." *Id.*; *Starks* at 163.

{¶ 28} After reviewing the entire record, weighing inferences, and examining the credibility of the witnesses, we cannot say that appellant's conviction for OVI was against the manifest weight of the evidence. The evidence produced at trial supports the jury's finding that appellant's consumption of alcohol on the night in question adversely affected his actions, reactions, conduct, movement or mental processes or impaired his reactions to an appreciable degree, thereby lessening his ability to operate the vehicle he was driving. The jury heard testimony that appellant had been served six or seven alcoholic drinks throughout the course of the evening, that appellant had admitted to police officials he had been drinking on the night of the incident, and that appellant was observed driving a Chevrolet Cavalier in Clermont County in a manner that Sergeant Robinson described as indicative of an impaired driver (e.g. speeding, driving into oncoming traffic, driving in the improper lane, moving within lanes, going left of center, running stop signs, passing cars on curves, and driving through yards in residential areas).

{¶ 29} While the jury heard testimony from Edwin that he did not believe appellant was intoxicated on the night of June 21, 2011 and neither of the bartenders who served appellant alcohol observed appellant slurring his words or stumbling around their respective bars, the jury was entitled to disregard such testimony if they did not find it credible. *See State v. Brown*, 12th Dist. Butler CA2011-11-207, 2013-Ohio-1610, ¶ 37 ("The jury in this case was in a better position to view the witnesses, observe their demeanor, and assess their credibility, and was free to believe or disbelieve all, part, or none of their testimony"). "It is well-established that '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.'" *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11, quoting *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 38.

{¶ 30} Given the evidence the jury had to consider, we find appellant's conviction for OVI was not against the manifest weight of the evidence. Appellant's second assignment of error is, therefore, overruled.

{¶ 31} Assignment of Error No. 3:

{¶ 32} THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO TWO FIVE YEAR TERMS OF IMPRISONMENT.

{¶ 33} Assignment of Error No. 4:

{¶ 34} THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE PRISON TERMS.

{¶ 35} In his third and fourth assignments of error, appellant challenges his 13-year prison sentence. Appellant first argues that the two five-year prison terms he received on count four's OVI conviction and its accompanying specification were excessive and an abuse of discretion given that his conduct was "less serious" than conduct normally constituting the

offense of OVI. Appellant also argues that the trial court erred in ordering that the five-year prison term for the specification accompanying count four run consecutively to count four's five-year prison term, as it too resulted in an excessive sentence.[1]

{¶ 36} As we recently noted in *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, "the standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences." *Id.* at ¶ 6, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7; *see also State v. Cochran*, 10th Dist. Franklin No 11AP-408, 2012-Ohio-5899, ¶ 52. "When considering an appeal of a trial court's felony sentencing decision under R.C. 2953.08(G)(2), '[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.'" *Crawford* at ¶ 7, quoting R.C. 2953.08(G)(2). However, an appellate court's review of an imposed sentence is not whether the sentencing court abused its discretion. *Id.*; *State v. Warren*, 12th Dist. Clermont No. CA2012-12-087, 2013-Ohio-3483, ¶ 6. Rather, an appellate court may take any action authorized by R.C. 2953.08(G)(2) only if the court "clearly and convincingly finds" that either: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;" or (2) "[t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b).

{¶ 37} In making a determination under R.C. 2953.08(G)(2), it is "important to understand that the clear and convincing standard * * * is written in the negative." *Warren* at

---

1. Appellant concedes that the trial court was required by R.C. 2923.331(D) to run his three-year prison sentence on count one's failure to comply with the order or signal of a police officer consecutively to his underlying OVI offense. Therefore, appellant's challenge to the imposed consecutive sentences is limited to the trial court's decision to run the five-year prison term on the specification consecutively to the five-year prison term on the OVI conviction.

¶ 8, quoting *Crawford* at ¶ 8. "It does not say that the trial judge must have clear and convincing evidence to support its findings." *Id.* Rather, the language in R.C. 2953.08(G)(2) "establishes an 'extremely deferential standard of review' for 'the restriction is on the appellate court, not the trial judge.'" *Id.*, quoting *Crawford* at ¶ 8. An appellate court will not find a sentence clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly applies postrelease control, and sentences appellant within the permissible statutory range. *Id.* at ¶ 7; *State v. Humes*, 12th Dist. Clermont No. CA2009-10-057, 2010-Ohio-2173, ¶ 18.

{¶ 38} In determining whether appellant's sentence on count four and its accompanying specification falls within the permissible statutory range, this court must first determine if recently enacted 2011 Am.Sub.H.B. 86 (H.B. 86) impacted the maximum sentence that an offender may receive under Ohio's OVI statute. To date, only one other appellate court has addressed this issue.

{¶ 39} In *State v. Owen*, 11th Dist. Lake No. 2012-L-102, 2013-Ohio-2824, ¶ 2, the Eleventh District determined that a conflict exists between Ohio's OVI statute, R.C. 4511.19, which authorizes a five-year maximum sentence for third-degree felony OVI, and Ohio's general sentencing statute, R.C. 2929.14(A)(3), which provides for a maximum sentence of three years for those third-degree felonies not listed in R.C. 2929.14(A)(3)(a)—of which OVI is not specifically listed.[2] In *Owen*, the defendant was convicted of a third-degree felony OVI in violation of R.C. 4511.19(A)(2), as she had previously been convicted of a felony OVI within the last 20 years of the date of her current offense and refused to submit to a chemical

---

2. The specific felonies listed in R.C. 2929.14(A)(3)(a) for which a five-year prison term may be imposed are: aggravated vehicular homicide, aggravated vehicular assault, sexual battery, unlawful sexual conduct with a minor, gross sexual imposition, and robbery or burglary if the offender has two or more prior aggravated or regular robbery or burglary convictions.

test in connection with her current offense. *Id.* at ¶ 3-4. Although Owen was sentenced to five years in prison pursuant to R.C. 4511.19(G)(1)(e)(ii), only two years were ordered mandatory and the remaining three years were suspended. *Id.* at ¶ 12. Upon Owen's release from prison, she was ordered to be placed on community control for five years. *Id.* Owen appealed, arguing that the three-year maximum sentence provided for in R.C. 2929.14(A)(3) prevailed over the five-year maximum sentence authorized by R.C. 4511.19. *Id.* at ¶ 22. The Eleventh District agreed with Owen, holding:

> It cannot be disputed that these two statutes are in irreconcilable conflict since the maximum sentence authorized for a third-degree felony OVI under R.C. 4511.19(G)(1)(e) is five years, while the maximum sentence allowed for third-degree felonies, other than those listed in R.C. 2929.14(A)(3)(a), is three years. Since these statutes are in conflict and both are specific in nature, we hold that, pursuant to R.C. 1.52, the later enacted statute, i.e. R.C. 2929.14(A)(3), prevails over R.C. 4511.19(G)(1)(e)(ii).

*Id.* at ¶ 29.

**{¶ 40}** We disagree with the Eleventh District's finding that the "two statutes are in irreconcilable conflict." Rather, under the facts of this case—where appellant was convicted of an R.C. 2941.1413 specification—we find that Ohio's OVI statute, R.C. 4511.19, and Ohio's general sentencing statute, R.C. 2929.14, are not in conflict with one another and can be read together to ascertain the General Assembly's intent to permit a five-year maximum sentence for a third-degree felony OVI.

**{¶ 41}** The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *State v. Richardson*, 12th Dist. Clermont No. CA2012-06-043, 2013-Ohio-1953, ¶ 12, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11. In determining intent, we first look to the language of the respective statutes. *Id.* "If the meaning of the statute is unambiguous and definite, it must be applied as written and no

further interpretation is necessary.  *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545 (1996).

{¶ 42} Ohio's general sentencing statute provides:

*Except as provided in division * * * (B)(4) * * * of this section * * ** if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:

* * *

(3)(a) For a felony of the third degree that is a violation of section 2903.06, 2903.08, 2907.03, 2907.04, or 2907.05 of the Revised Code or that is a violation of section 2911.02 or 2911.12 of the Revised Code if the offender previously has been convicted of or pleaded guilty in two or more separate proceedings to two or more violations of section 2911.01, 2911.02, 2911.11, or 2911.12 of the Revised Code, the prison term shall be twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months.

(b) For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

(Emphasis added.)  R.C. 2929.14(A).  From the above language, it is evident that the General Assembly intended for R.C. 2929.14(A)(3)(a) and (b) to apply only where no other specific provision of the general sentencing statute reserved sentencing for a third-degree felony.  However, division (B)(4) of the general sentencing statute was clearly reserved for third-degree felony OVI sentencing.  R.C. 2929.14(B)(4) specifically provides that "[i]f the offender is being sentenced for a *third * * * degree felony OVI offense under division (G)(2) of section 2929.13 of the Revised Code*, the sentencing court *shall impose upon the offender a mandatory prison term in accordance with that division.*"  (Emphasis added.)  R.C. 2929.13(G)(2), in turn, provides that "[i]f the offender is being sentenced for a third degree felony OVI offense * * * the court shall impose upon the offender a mandatory prison term of

- 17 -

one, two, three, four, or five years if the offender also is convicted of * * * a [R.C. 2941.1413] specification" (that the offender has been convicted of five or more OVIs within the past 20 years).

{¶ 43} Ohio's OVI statute also sets forth that an offender who has been convicted of a third-degree felony OVI in violation of R.C. 4511.19(A)(1)(a) shall be sentenced in accordance with R.C. 2929.13(G)(2). Pursuant to R.C. 4511.19(G)(1)(e)(i), an offender who has been convicted of a third-degree felony OVI shall be sentenced to "a mandatory prison term of one, two, three, four, or five years *as required by and in accordance with division (G)(2) of section 2929.13 of the Revised Code* if the offender also is convicted of * * * a [R.C. 2941.1413] specification." (Emphasis added.)

{¶ 44} Having found that R.C. 2929.14(B)(4) and R.C. 4511.19(G)(1)(e)(i) both permit a maximum mandatory five-year prison term for a third-degree felony OVI, we find the trial court's imposition of a five-year prison term on count four was not contrary to law, as it falls within the permissible statutory range. Furthermore, as a mandatory additional prison term of one, two, three, four, or five years on the specification is provided for in R.C. 2941.1413, we find no error in the trial court's decision to sentence appellant to five years on the specification.

{¶ 45} We further find that the record demonstrates the trial court considered the principles and purposes of sentencing and the seriousness and recidivism factors before sentencing appellant. The record reflects that the trial court discussed appellant's extensive prior record, which included eight previous driving under the influence convictions, six convictions for failure to stop or comply with the order of a police officer, and 13 convictions for driving under suspension, as well as the fact that appellant committed the present alcohol-related offense just months after being released from prison on a similar 2007 driving under the influence conviction. The court noted appellant has a "very high risk of recidivism,"

his actions were of great risk to the public, and he was "very lucky" that no one died in the high speed chase. Given the circumstances of this case, the trial court did not err in sentencing appellant to the maximum sentence on his third-degree felony OVI conviction or on its accompanying specification.

{¶ 46} Appellant also challenges the trial court's imposition of consecutive sentences. Appellant does not argue that his sentence was clearly and convincingly contrary to law or that the court failed to comply with the requirements of R.C. 2929.14(C) in imposing consecutive sentences. Rather, appellant argues that the trial court's decision to run his five-year prison term for the specification consecutively to his five-year prison term for felony OVI resulted in an "abuse of discretion." As noted above, the General Assembly has explicitly stated through the passage of R.C. 2953.08(G)(2) that this court's standard for review "is not whether the sentencing court abused its discretion." *State v. Pearce*, 12th Dist. Clermont No. CA2013-01-001, 2013-Ohio-3484, ¶ 27. Therefore, we are not entitled to review the trial court's decision under the more lenient abuse of discretion standard. *Id.*; *Crawford*, 2013-Ohio-3315 at ¶ 17. However, in the interest of justice and fairness, we will review the trial court's decision in accordance with the applicable standard as provided by R.C. 2953.08(G)(2).

{¶ 47} H.B. 86 revived the requirement that a trial court make certain factual findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 8. A trial court must now engage in a three-step analysis and make certain findings before imposing consecutive sentences pursuant to R.C. 2929.14(C)(4). *Id.* at ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(C)(4). Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the

- 19 -

offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 48} "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Smith*, 12th Dist. Clermont No. CA2012-01-004, 2012-Ohio-4523, ¶ 26, citing *State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110828, 2012-Ohio-3349, ¶ 16. In imposing consecutive sentences, "the trial court is not required to state any talismanic language" or otherwise give reasons explaining its findings. *State v. Oren*, 12th Dist. Madison No. CA2012-05-010, 2013-Ohio-531, ¶ 25; *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 86. Nevertheless, the record must reflect that the court made the requisite findings. *Id.*

{¶ 49} In imposing consecutive sentences here, the trial court explicitly stated:

> The consecutive sentences are necessary to protect the public and to punish Mr. Sturgill. They're not disproportionate to the seriousness of his conduct and to the danger he poses to the public. The harm caused by the separate offenses is so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects

- 20 -

the seriousness of the conduct. And his history of criminal conduct demonstrates the consecutive sentences are necessary to protect the public from future crime by him.

These findings were later memorialized in the trial court's sentencing entry.

{¶ 50} From the trial courts statements at the sentencing hearing and the language utilized in the sentencing entry, it is clear that the trial court properly complied with the dictates of R.C. 2929.14(C)(4). *See Crawford*, 2013-Ohio-3315 at ¶ 13-16; *Dillon*, 2013-Ohio-335, ¶ 6-13. The trial court, therefore, did not err by imposing consecutive sentences in this matter.

{¶ 51} As the trial court considered the principles and purposes of R.C. 2929.11 and the factors listed in R.C. 2929.12 before sentencing appellant within the permissible statutory limits, and it made the required findings before imposing consecutive sentences in accordance with R.C. 2929.14(C), we find that appellant's sentence does not run afoul of R.C. 2953.08(G)(2) and is not clearly and convincingly contrary to law. Appellant's third and fourth assignments of error are, therefore, overruled.

### III. CONCLUSION

{¶ 52} For the reasons set forth above, we hereby affirm appellant's convictions and sentence.

{¶ 53} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.